Judge Cabell
pronounced the court’s opinion as follows :
John Sfiotiswood, son and heir of Major-General Alexander Sfiottswood, deceased, made and published his last will and testament, containing, inter alia, certain devises and legacies in favour of his sons Alexander, John and Robert, and constituted Bernard Moore and others, his executors. Of the persons thus named, Moore only qualified. He also became the guardian of the two sons Alexander and John ; and having, as the bill alleges, greatly misapplied and wasted the assets in his character of executor, and greatly vio* lated his duty as guardian, he died, without having rendered any account as guardian or executor, insolvent, and without any pevsonal representative: — whereupon, this suit was brought, in the late High Court of Chapcery, by the late Alexander Sfiottswood, eldest son and heir at law of the said John Sfiottswood, deceased, and also as administrator de bonis non of his grandfather Major-General Alexander Sfiottswood, deceased, and as administrator de bonis non of his father John Sfiottswood, deceased, and by the said John Sfiottswood, son of John Sfiottswood, deceased, against the representatives of the securities of the said Bernard Moore, as guardian and executor as aforesaid, and against one of the sons of the said Moore, and the representative of another son, who was his oldest son and heir at law, seeking a discovery of assets, calling for a settlement of the accounts of Moore in both characters, and praying to subject the defendants to the payment of whatever should appear to be due, according to the respective claims of the complainants as legatees, administrators de bonis non, and as wards, and in such proportions from the defendants as to the court should seem proper. To this bi}l the defendants, demurred, assigning, as. *292 the cause of demurrer, that the remedy of the complainants, if they had any, was at law, and not in equity. These demurrers were over-ruled by the Chancellor in 1793, who directed the accounts to be taken and reported by a commissioner. Ata subsequent term, however, (March 1806,) after the accounts had been taken and reported, he changed his former opinion, sustained the demurrer, and dismissed the bill; and from that decree an appeal was taken to the Court of Ap peals.
The case will be examined, first, in relation to the securities of Moore on his bond as executor. The argument mainly relied on by the counsel for the appellees, in support of the decree, is understood by the court to be essentially • this ; that, by the death of Moore, under the circumstances of this case, before a devastavit had been' actually fixed on him by a verdict, although a devaitavit might in fact have . been committed, the securities were discharged at law; and that' being securities, they could not be farther charged in equity than at law. To ascertain the extent and duration of the obligations and liabilities of securities for executors, it will be necessary to advert to the act of assembly requiring such securities, and prescribing the form and effect of their bonds: and it is readily admitted that these obligations and liabilities, whatever they may be, grow out of, and defend upon, the bonds so executed by them, and not upon any preexisting equitable or moral consideration whatever. The rights and interests of creditors and legatees were the objects which the legislature had in view. The confidence reposed in executors by their testators did not afford a sufficient guard. ' That confidence was often abused by executors, whose own estates were’ not always found sufficient to indemnify creditors arid legatees for the loss which they thereby sustained. As a farther indemnity against any misapplication or waste of the assets, executors are not permitted to qualify until they give bond for the faithful discharge. bf the duties of their office.(a) The form of the penalty of the bond is not prescribed, but it usually is, and certainly ought to be, joint and several; and it is so in the case now *293 before the court. The condition is, that the executor shall make and exhibit an inventory of the goods, chattels and credits of the deceased — shall administer them according to law — shall make a just and true account of his actings and doings therein, when required, and shall pay and deliver all the legacies contained in the will, as far as the estate will extend, and as the law shall charge him. This bond is made payable to the sitting justices and their successors ; — shall not become void on the first recovery, but may be put in suit and prosecuted, from time to time, by and at the cost and charge of any party or parties injured. In considering, on general principles, independently of adjudicated cases, the rights and obligations of the parties growing out of these bonds, it may be asked, when, in the eye of the law, do the obligations of the securities commence ? They commence whenever the executor breaks the condition of the bond ; as, for example, in the case of a legacy, whenever the executor has received assets sufficient, after the discharge of debts, for paying the legacy, or so much thereof, and has wasted those assets : — at the same instant, also, commence the rights of the legatee as against the securities; for rights and obligations are convertible terms. So soon, then, as the devastavit is in fact committed, he acquires a right to compensation as against the securities. The obligation on the one hand, and the right on the other, once existing, what is to extinguish them ? Is there any thing in the act of assembly which countenances the idea, that the death of an executor, insolvent, and without personal representatives, absolves his securities from their liability for a devastavit previously committed ?
Every principle of construction applied to that act forbids such a conclusion. It is very different from the case of a joint obligation ; — for there, both parties enter into the contract, with the full knowledge of the legal principle that, by the death of one obligor, the whole obligation devolves on the survivor or survivors. But, in this case, the legislature intended to provide a perfect and permanent safeguard and indemnity for the rights of the creditors and le *294 Satces 5 securities, their heirs, executors, and administrators being jointly and severally bound, and the bond behig suable, “from time to time,” by any party or parties *njurec'- The very thing which the law so anxiously intended to guard against, the devastavit by the executor has been committed; and yet those who undertook that he should not commit it, — those, without whose intervention he would not have had the power to commit it, and who might, at any time, have arrested him in his progress — seek to absolve themselves from their liability, upon no other ground than that he died before he was convicted of the fact. The court can perceive no principle of justice, or of law, on which such claim to be discharged can rest. It therefore concludes, that the obligation continues, as does also the correspondent right of those who have been injured by breach of the bond. But, to the successful prosecution that right in a court of justice, it is necessary that the party shall prove, at the trial, all the circumstances which shew that the right exists. And if this cannot be done in one tribunal, owing to its particular forms of proceeding, it may be done in another; for it is a fundamental principle that there is no right without a remedy.
But it is objected by the counsel for the appellees that several adjudicated cases (a) shew that, under the circumstances of this case, the securities áre discharged at law; or, in other words, as the court understands the objection, . j • that the right of the appellants, as against the-securities, is extmguished. The court has examined all those cases with great attention. One general remark is applicable to them ab- They went off, not on the ground of a want of right in a case like the present, shewn to exist; but on the ground of a want of evidence to make out such a case. A right, recognized by law, is one thing : — the proof of the circumstances, necessary to shew that that right exists in a particular individual, is another. This distinction may be well elucidated by the case now before the court. According to the express words of the act of assembly, any party or parties injured may put the executor’s bond in suit from time *295 to time, and as often as the occasion may occur. This is a right as eternal as the principles of justice, and knowing no limitation except that prescribed by the amount of the penalty of the bond. Any person may institute a suit on . . . . the bond, on the mere allegation that he is a party injured; but, before he can have the substantial benefit of the act, before he can recover from the securities, he must prove all the circumstances which shew him to be a party injured. And this is believed to be the amount of the decision in Braxton v. Winslow, the first case on the subject, and the foundation of all the subsequent cases. In that case, the court says, “ the true question is this; has the relator Waller brought himself within the act? — or, in other words, does it appear from the record that he is a party injured, within the words and meaning of the act ? A man who claims as a creditor, and means to take the benefit of the act, must shew himself to be a creditor; that the testator left assets; that they came to the hands of the executor ; that there was a sufficiency to discharge his demand, or so much thereof, after payment of debts of higher dignity ; and that the executor has wasted the assets. Without this concurrence, there is no injury done him.” If, however, this concurrence be established, an injury has been done, and he will recover accordingly. But how is this concurrence, and particularly the devastavit, to be established ? In a court of law, (and it is proper to observe that all the cases relied on by the appellees are cases at law,) there is no form of proceeding, pending the action, by which the devastavit can be established. If, therefore, it has not been established before, the party cannot recover, because he fails to prove that which is necessary to entitle him to a recovery. But widely different is the mode of proceeding in a court of equity. Wherever a case occurs, over which it has jurisdiction, it may, at once, convene all the parties, however remotely concerned in interest, and, pending the same suit, and by a proceeding forming a part thereof, may ascertain the fact whether the devastavit has been committed, or not; and if it shall appear, by that procedure, that a devastavit *296 has been committed, then, and not before, will it subject the securities ; although they have all along been held in court, for their own benefit, to attend to investigations in which they were so materially interested. There is, how- . . . t . , .. . ever, no difference in this respect, between courts oi law and courts of equity, except in the forms of their proceedings, and the ability whicli is thereby afforded to courts of equity to give relief in some cases where courts of law could not. In deciding on the rights of the parties, they proceed on principles common to both courts; for a court of equity will no more subject a security before a devastavit is established, than a court of law.
It was said by the counsel for the appellees, that the decision in Braxton vs. Winslow, was always considered as having' established the law, that, under the circumstances of that case, the creditor had forever lost his debt; and that, had the court not so considered, they would have intimated an opinion that relief might have been obtained in equity. The answer to this is, that the Special Court was sitting as a court of law, deciding a legal question, on the case, as then presented, and had nothing to do with what a court of equity might do, in a case rendered different in its circumstances by the forms peculiar to such a court. It is worthy of remark, however, that in less than three years after that decision, (in October, 1793,) Chancellor Wythe, who formed one of the Special Court in Braxton vs. Winslow, overruled the demurrers in the very case now before the court ; thereby deciding that the court of equity, in the case of a legatee, could give relief, even against securities, under the circumstances alleged to exist; and, as far as relates to the devastavit, there is no difference between creditors and legatees. As he, afterwards, in March term, 1806, sustained the demurrers, the fact of his having at first overruled them is mentioned with no other view than to repel the presumption which is said to arise from the silence of the court in Braxton vs. Winslow; for it is probable that Mr. Wythe remembered the grounds, and the extent of the decision in that case, as well in 1793, as he did in 1806,
*297 But that the death bf an executor, under the circumstances of this case, before a devastavit has been fixed on him, docs not discharge h>s sureties, no longer rests on reason only. The point has boon decided in the Court of Appeals, in the caso of Taliaferro and Gaines vs. Thornton and wife, (Call’s M. S. Reports, spring term, 1806.) In that case a bill was brought by Thornton and vafe, to recover a legacy due to the wife, under the will of Philip Rootes, her father, against the representatives of the securities of Philip Rootes and Thomas Reed Rootes, as executors of the said Philip Rootes, their father, deceased. The bill states that one of the executors had died insolvent, without saying whether any person had qualified as his executor or administrator ; and that the other had died intestate, and that no person had taken administration of his estate. Although the bill made the representatives of both the sureties parlies, yet no subsequent proceedings were had against the representatives of one of them ; nor were any persons made parties as heirs or descendants of the two sons the executors. There was a demurrer filed by the representatives of the surety against whom the proceedings were had ; for that the complainant’s remedy, if any, was at law. The demurrer was overruled, and a decree entered against them. On an appeal to the Court of Appeals, it was decided that the demurrer was properly overruled ; it being a case in which equity had jurisdiction, and, having jurisdiction, should go on to determine the disputes between the parties ; and it was, moreover, expressly decided, that the representatives of the securities of the executors should be made liable, in that suit, (there had been no previous suit, and it was declared to be unnecessary,) for the misapplication and wasting of the funds on which the legacy had been charged, in case the executors, their heirs or representatives, or those into whose hands those funds should be found to have been taken, should be unable to make good the same. But it appearing from the answers that many necessary parties had been omitted, and the decree being in other respects erroneous, it was reversed, and the cause remanded to the Court of Chancery.
*298 On a full view of the principles growing out of that case»this court is clearly of opinion, that, where an executor dies without any personal representative, a court of equity may, at the suit of a legatee, and without any previous suit having . . ° been brought against the executor to convict him of a devastavit, convene the securities of the executor, or their representatives, and the persons who would be interested in any estate which the executor may have left, and make the se-' curities liable for any misapplication or wasting of the assets which shall be established in the progress of the suit above mentioned. Not to afford relief in such case, would be to leave a right without a remedy. The forms of the Court of Chancery are commensurate to the purpose; and equity will not insist on any parties but those who are concerned in interest. Judge Tuckeu, in the case of Gordon's Administrator vs. the Frederick Justices, 1 Munf. p. 1. where he reviews and approves of the decision of Braxton vs. Winslow, refers to the case of Taliaferro and Gaines vs. Thornton and wife, and so far from thinking there is any inconsistency in the two decisions, seems to extend the principles of the latter case, beyond legatees, to all persons who, from any cause, may be entitled to come into a court of equity.
The claim of the complainant, Alexander Sflottswood, as administrator de bonis non, is considered as standing on the same ground as that of a legatee. It necessarily involves a discovery of assets and settlement of accounts, good grounds for equitable interference; and, when the court is once in possession of the case, it may go on and determine the disputes between the parties.
The court also considers the case of Taliaferro vs. Thornton and wife, as conclusive authority to shew that a court of equity may give relief against the sureties on the guardiau’s bond. A bill in equity will unquestionably lie against the guardian himself, notwithstanding he has executed a bond on which he might also be sued at law. And if, in the case of an executor’s bond, (as is proved by Taliaferro vs. Thornton and wife,) the securities, whose responsibility cannot be brought to bear upon them until the inability of the princi *299 pai be established, may be joined as defendants in the same suit with their principals, or their representatives, a Jortiori may the securities of the guardians, whose responsibility is direct and immediate even in a court of law.
As to the propriety of joining the two setts of securities, the court is equally clear. For, wherever there is a doubt as to who is to pay, justice to all concerned requires, that the persons as to whom the doubt exists should be made parties.
On these grounds, (without deciding any other point, made in the argument, but not necessarily growing out of the pleadings,) the court is unanimously of opinion that the demurrers were improperly sustained. The decree appealed from is therefore reversed, the demurrers overruled, and the cause remanded to the Court of Chancery for the Richmond District, to be farther proceeded in.

 Vir. Laws, ed. bf 1769, p 162,3.

 Braxton v. Winslw Gordon’s administrator v. Frederick Justices, 1 Munf. p. 1; Catllet and others v. Carter's executors 2 Munf.p. 24.