Tucker, P.
dissented. He said, I am satisfied in this case, that the appellee had a right to consider the defendant, James Kelso, as within the provisions of the statute prescribing the mode of proceeding against absent debtors. That statute authorizes a proceeding by foreign attachment, where it appears that the defendant is not a resident of the commonwealth, or that, upon inquiry at his or her usual place of abode, he could not be found so as to be served with process. Hero, the bill sufficiently alleges, I think, that the defendant was believed to be non-resident, and at any rate, to use its language, that be could not be found. It is too late, in this stage of the cause, to bring this matter into question, after an appearance and answer by James Kelso, without putting the matter fairly in issue. But if it were not, I think enough appears to sustain the bill. Sittlington deposes, that it was generally believed, that he had removed to, and was living in, Kentucky, about the time the suit was brought; and he himself, in a letter, alludes to the fact that be had been in Kentucky after the right of action accrued. Moreover, Sittlington and Francisco, with several other witnesses, conspire to fix the fact that he systematically kept out of the way of the process of the law; and the record shews, that process after process issued against him in this suit, unavailingly, for several years. He was, then, precisely such a defendant, as is permitted to be sued in equity upon a law demand, because he cannot be arrested upon legal process. In equity, he was liable to be proceeded against by order of publication, and after decree, by such order as the court might think proper. Had he never appeared, the decree against him would have been erroneous, without an *314 order of publication duly executed. But, as he appeared , , ^ j • i j and answered, that measure was not necessary, and, indeed would not have been proper. Had he, upon appearing, pleaded in abatement, to the jurisdiction, that he had not absconded, and was not a non-resident, and that fact had appeared, the bill must have been dismissed. But it was essential that that matter should be so pleaded, according to the statute, 1 Rev. Code, ch. 66. § 86. which applies in all cases, where the objection to the jurisdiction depends upon 'circumstances extrinsic. After answer filed, and no plea in abatement to the jurisdiction, the exception to jurisdiction, founded on a state of facts different from that alleged in the bill, cannot be heard. For this, there are sound reasons) 1. to prevent the plaintiff, when he comes to hearing upon the merits, from being surprized by an objection which he could not anticipate; and 2. to prevent the gross abuse (as in this case) of awaiting the last stage of a controversy, before an objection is presented, which, without touching the merits, turns the plaintiff round to a new course of litigation. This is, in my opinion, a gross abuse. The objection would seem to be made, for the first time, in this court; and to allow it, would be to repeal a most wise and salutary statute; a statute whose provisions, instead of being narrowed and confined, deserved to have been construed with the greatest liberality.
The court then, was, in my opinion, properly possessed of the cause. Kelso submitted himself to the jurisdiction Without objection, and filed an answer to the merits. That did not oust the jurisdiction. The filing of the answer, whether with or without security, and resting upon the merits, has no other effect than to discharge the attachment. It does not abate the suit. The only effect of the answer is, to make up an issue on the merits, and present the case to the court for its decision; for, as its jurisdiction well attached at first, it must proceed to settle the matter between the parties. This is too plain to be contested. If Á. attaches B.’s goods in the hands of C. for a bond debt, *315 and B. enters his appearance, answers, and gives security 5 *• " the attachment is discharged, indeed, but the chancellor proceeds to decree the amount of the bond, though it is obviously a legal demand. For, in truth, though the proceeding is had in equity, the question between the debtor and creditor, in these cases, is, generally, a legal demand, to which the defendant may plead such matter as would have been good in a court of law. Wilson v. Koontz, 7 Cranch, 202.
The court thus having jurisdiction of the case regularly, at least as to James Kelso, proceeded to a decree, which is not assailed upon the merits: so far from it, James Kelso has acquiesced in it. He took no appeal. John Kelso is the only appellant.
By the decree thus rendered, and which is in its character definitive, if not technically final, the plaintiff’s demand is decreed him. And it cannot be denied, that that decree would have bound the lands of James Kelso, and indeed does bind the lands of James Kelso, as he did not appeal from it. The instant this lien on his lands attached, the right to assail the fraudulent deeds sprung into existence, according to the strictest principles. That right now unquestionably exists, I presume, under this decree; and although this court should reverse the whole proceedings as to the fraudulent grantees, yet the plaintiff may commence against them de novo, on the foot of this decree, and demand the rescission of their deeds. The utmost, then, to be effected is, that the parties will be turned around to a new race of litigation, to try again a question already settled by the verdict of a jury; and settled, too, to their satisfaction, for no new trial has been solicited. If this oppressive and vexatious course is indeed required by the rules of the court, we must, I acknowledge, acquiesce in it. But, while on the one hand, I think no direct authority can be produced in its favour, it is not difficult to shew, that, in equity, parties may be brought before the court, along with the debtor of the plaintiff, with a view to charge them, whet) *316 the demand shall have been first established, against the principal defendant. Thus, although it is admitted that, as a general rule, an executor and his sureties could not, with-a previous suit establishing a devastavit, be sued in equity for the purpose of subjecting them ; yet, if the executor is out of the state, or is dead, leaving no representative, such suit will be entertained. Spotswood v. Dandridge, 4 Munf. 298. In such case, as the law formerly stood, they would only have been liable at law, after a judgement should have been recovered against him. And yet equity held the innocent surety in court, until it could pronounce that judgement; and, in the same instant, decreed also against them. How much more reasonable, in this case of a fraudulent and absconding debtor, to bring him and his accomplices before- the court together, the court having full jurisdiction as to him, and to hold them in court until it could pronounce judgement against him ? If, indeed, the creditor was without this remedy against an absent defendant and his fraudulent donees, then it is obvious, that nothing more was wanting to consummate a fraud, before the statute authorizing lands to be attached, than that the fraudulent donor should hasten to quit the state, before a suit at law could be prosecuted against him. In that event, as no judgement could be rendered, no lien could be obtained. The creditor must have been without remedy; and the perpetrators of the fraud would have been protected by this nicety, in the enjoyment of their nefarious gains. I cannot readily accede to propositions, which would lead to such consequences.
If it be said, that a demurrer to the bill by the fraudulent donees, would have been sustained, I answer, it would not lie with more propriety, than a demurrer by the sureties of the executor, in the case above cited. The same answer would be given to the sureties who are privies in contract, and to the.donees who are privies in fraud; namely, that the establishment of the plaintiff’s demand against their principal, would, in the same instant, justify a decree against *317 themselves. Having connected themselves with him, they are joined with him in action, to abide his fate.
Upon the whole, I am of opinion, that the court had jurisdiction of this case, and that the decree is correct, except in one particular. A sale of the land is decreed, which should not have been directed, unless it had appeared that the rents and profits would not keep down the interest; and moreover, the sale of the whole is decreed, instead of a moiety, which upon principle, and on the authority of Stileman v. Ashdown, 2 Atk. 608. is all that the plaintiff had a right to charge. The fraud does not add to the extent of his power to charge the land. Nor will this court add to it. It only removes the fraudulent deed out of his way, and leaves him to the effect of his elegit, which is to charge the moiety only j with this difference, that a sale, instead of an extent of that moiety, will be directed, where it has been ascertained that the rents and profits will not keep down the interest. The court, therefore, should have decreed the debt to the plaintiff; and, upon that foundation, should have further decreed the deeds to be void. They being removed out of the way of the plaintiff, he might then have been at liberty to sue out his elegit on the decree; and, had it appeared, that the rents and profits would not keep down the interest, then and not till then, a sale should have been decreed of the moiety.
Decree reversed, and bill dismissed.