DANIEL GREEN'S ADMINISTRATRIX *v.* FLETCHER CREIGHTON, IN HIS OWN RIGHT, AND AS EXECUTOR OF JONATHAN McCALEB DECEASED.

The courts of the United States, as courts of equity, have jurisdiction over executors and administrators, where the parties to the suit are citizens of different States, and this jurisdiction is not barred by subsequent proceedings in insolvency in the Probate Court of a State.

In such a case, the courts may interpose in favor of a foreign creditor, to arrest the distribution of any surplus of the estate of a decedent among the heirs.

Although at law a creditor cannot sue the surety upon an administration bond until he has obtained a judgment against the administrator, yet it is not so in equity; and in the present case, where the original debtor and his surety are both dead, insolvent, and a portion of the assets of the estate of the latter can be traced to the possession of his administrator and his surety, the power of a court of equity is required to call for a discovery of the amount and nature of the assets in hand.

THIS was an appeal from the Circuit Court of the United States for the southern district of Mississippi.

The bill was originally filed by Daniel Green, a citizen of the State of Arkansas, against Fletcher Creighton and Jonathan McCaleb. Whilst the proceedings were pending, McCaleb died, and a bill of revivor was filed against Fletcher Creighton, his executor.

In 1836, Wheeler C. Green died in Mississippi intestate and without issue. His personal representatives were Daniel Green, Reuben Green, and Sally Smith. In 1837, the latter two conveyed their interest in the estate to Daniel Green, who thus became the sole claimant.

In October, 1836, letters of administration were granted to Albert Tunstall, who gave as sureties upon his bond, Amos Whiting, George W. Summers, and Eli West.

In 1837, Whiting died, and letters of administration upon his estate were granted to his widow, Maria L. Whiting, and George Lake. In 1839, Maria intermarried with J. M. Rhodes, who thereupon became administrator of said Whiting in right of his wife.

In March, 1839, Green instituted proceedings against Tunstall, as administrator, in the Probate Court of Claiborne county, and at June term, 1841, obtained a decree for $61,194.76; and it was further ordered, that the administration bond should be put in suit in any court having cognizance of the matter.

So far, Green's remedy was against Tunstall personally, and those who represented Whiting, the surety upon his bond.

In October, 1841, Lake and Rhodes and wife were removed from the administration by the Probate Court; and Fletcher Creighton was appointed administrator *de bonis non* of Whiting, who gave bond in the penalty of $100,000, with Jonathan McCaleb as surety.

Green had therefore to look to Tunstall personally, and Creighton as the administrator of Whiting, and McCaleb as the surety of Creighton. The bill alleged that a large amount of assets of the estate of Whiting came into the hands of Creighton.

*Green's Administratrix* v. *Creighton et al.*

In August, 1843, Tunstall died insolvent, without having paid any part of the money which he had been decreed to pay by the Probate Court.

The bill stated that a large amount of the assets in the hands of Creighton were at interest with McCaleb, his surety.

In 1844, Creighton, on citation for that purpose, made another and further administration bond, with Jonathan McCaleb as his surety, in the penalty of one hundred thousand dollars.

In 1848, Green filed his bill against Creighton and McCaleb. The prayer of the bill was, that the claim of the complainant against the estate of Amos Whiting, as surety of Tunstall, who administered on the estate of Wheeler C. Green, may be established by decree of this court, and against said Creighton, in his capacity as administrator *de bonis non* of said estate, to the amount of the liability of said Amos, for and on account of said Albert Tunstall, as administrator of W. C. Green. Also, that said Creighton and Jonathan McCaleb may admit assets in the possession of Creighton sufficient to pay the claim of complainant, or set forth in his answer a full account of all the assets, &c., of the estate of said Amos Whiting, which have come to the hands or knowledge of said Creighton, or of any other person within his knowledge.

That said Creighton may be decreed to pay to complainant such sums of money as may be decreed against the estate of Amos Whiting, or against said Creighton in his character as administrator *de bonis non*, if sufficient assets shall be found in his hands for that purpose; and if not, then for such amount as said Creighton shall be found liable for; and in case said Creighton shall not be able to pay such sum or sums on account of said insolvency, then that said Jonathan McCaleb may be decreed, as his surety, to pay it for him. The bill concludes with the general prayer for relief.

The defendants demurred to this bill, but the demurrer was overruled, and they were required to answer. Answers were accordingly put in, which entered into the merits of the case; but as the opinion of this court did not touch upon that branch of the subject, it is unnecessary to do so in this report.

*Green's Administratrix v. Creighton et al.*

One part of the answer must be inserted, because it raises one of the questions decided by this court, viz: the pendency of the proceedings in insolvency.

Further answering, these defendants aver that the estate of the said Amos Whiting was reported to be insolvent to the March term, A. D. 1841, of the Probate Court of Claiborne county, and was then so declared by said court, and commissioners appointed to receive and audit claims against the said estate; and that, by reason of various delays in relation thereto, the same still remains open for the proof of claims; and these defendants insist that the complainant is bound to make out his claim in the Probate Court in the manner required by the laws of the State of Mississippi, and has no right to maintain this suit to establish said claim against the estate of Whiting; and they pray that they may be allowed to rely on the same as a plea in bar to said bill; and they further insist that, in any event, the complainants can only be entitled to such a dividend upon his claim as the estate of said Whiting may pay.

This cause having come on to be heard at the May term, 1855, of said court, and the same having been argued and submitted, on the nineteenth day of May, 1855, on final hearing on bill, bill of revivor, answers to original bill and bill of revivor, exhibits, and proofs, and the same having been taken under advisement by his honor S. J. Gholson; the judge presiding on said final hearing, and the court, being now sufficiently advised in the premises, doth see fit to order, adjudge, and decree, and it is accordingly so ordered, adjudged, and decreed, that said bill and bill of revivor be and the same is hereby dismissed, and that the complainant pay the costs to be taxed, ordered, adjudged, and decreed, on this, the twenty-sixth day of January, 1856.

The complainant appealed to this court, his administratrix, Eveline C. Green, having become the party on the record.

It was submitted on printed arguments by *Mr. Freeman* for the appellant, and *Mr. Yerger* and *Mr. Wharton* for the appellee. Only those parts of the arguments will be noticed which

relate to the jurisdiction of the courts of the United States in the present aspect of the case.

The counsel for the appellant stated the case with more particularity than the above summary, and then continued:

Tunstall died insolvent; the money could not be made out of him. Amos Whiting, his surety, had died in 1837, and the only way to establish his liability, as surety for Tunstall, to pay the amount of Tunstall's defalcation to the estate of Green, was to proceed against the administrator of Whiting. But it is said that Whiting's administrator is not liable in equity to account until judgment had been first obtained against him at law. To this I reply, that it was the duty of Whiting, as surety of Tunstall, to see that he administered the estate of Green according to law. He neglected this duty; the Court of Probate had full jurisdiction to ascertain and decree the amount of Tunstall's indebtedness to the estate of W. C. Green, as administrator of the same; this decree was had in accordance with law, as shown by the pleadings and proofs, and the amount of this decree could have been forced out of Tunstall by attachment and imprisonment, if he had been possessed of the means to pay it. The decree of the Probate Court was therefore a lawful and final assessment of the damages against Whiting's principal in the administration bond, by the only tribunal in the State of Mississippi having jurisdiction of that subject, and must therefore be regarded as conclusive evidence of the amount of Whiting's liability for Tunstall, and with which his estate is chargeable.

1 Phillips's Ev., 246.

7 Howard's U. S. Rep., 220.

2 Lomax, 458, 459.

2 J. J. Marshall, 195.

But if this were not so, the answers of defendants admit that Tunstall inventoried the estate of W. C. Green at upwards of $20,000, no portion of which was ever accounted for in the Probate Court. The inventory at eight per cent. would now amount to $52,000, and, in any event, he would be liable for this amount, or the increase of the sixteen slaves and the

value of the bricks made on the brick yard of the estate of
Green.   There is no other claim established against the estate
of W. C. Green.   If, then, the amount of the damages have
been so decreed as to be binding on Tunstall, why is not the
same conclusive as to the amount of damages against his
surety ?  Because, say they, the administration bond affords a
remedy at law.   If true, that does not reach the question.
Bonds of administrators are the bonds of trustees in equity,
and the surety is liable for the amount, in whatever tribunal
the principal is liable.   The jurisdiction of this court over
executors and administrators is not affected by the Constitu-
tion and laws of Mississippi—its jurisdiction is not derived
therefrom nor limited thereby, but only by the Constitution
and laws of the United States; and these confer upon this
court the same jurisdiction over administrators as that of the
chancery courts of England.

9 Peters, 632, 658.

3 Wheat., 212, 4 do., 108.

5 Mason, 105.

8 Mason, 165.

3 Leigh, 407.

2 Blackford, 377.

1 Har. and J., 232.

Mumf., 368; 5 Rand, 319.

Stewart and Porter, 133; 1 Sto. Eq. Ju., 515, secs. 542, 54£
544, 545, 546, 547, 548, and 552.

Jeremy's Eq. Ju., 537, 538.

4 Johns. Ch. Rep., 619.

3 Johns. Ch. Rep., 56, 190.

Taylor and Benham, 5 How. U. S., 233.

Rule 51 of this Court.

From these authorities, it is evident that this court has full
jurisdiction over the subject matter of the bill, the objects of
which are to obtain a discovery of assets in the hands of the
administrator, not inventoried, and to reach equitable assets
of the estate in the hands of his surety, Jonathan McCaleb, and
others, and to marshall the assets of the estate of Whiting, if
the administrator does not admit sufficient assets to pay com-

plainant's demand. 1 Story, Eq. Ju., 601, 602, sec. 543, "a creditor may file his bill for the payment of his own debt, and seek a discovery of assets for this purpose only." If he does so, and the bill is sustained, and an account is decreed to be taken, the court will, upon the footing of such an account, proceed to make a final decree in favor of the creditor, without sending him back to law for the recovery of his debt, for this is one of the cases in which a court of equity, being once in rightful possession of a case for discovery and account, will proceed to a final decree on all the merits.

1 Story, Eq. Ju., pp. 603, 604, sec. 546.

The defendant, Jonathan McCaleb, is not only a surety on the bond of Creighton, but is charged with having in his hands equitable assets of the estate of Whiting, which a judgment against Creighton would not reach, and this fact is admitted by the answer of defendants. Creighton is alleged to be insolvent, and the charge is not denied. McCaleb, his surety, has money of the estate which Creighton refuses to collect; he is therefore a proper party, for all these reasons.

Story Eq. Pl., p. 212, sec. 178.

5 Gill. J., 432, 453.

10 Gill. J., 65, 100.

2 Rand., 398, 399.

In the case of the Ordinary v. Snooks, it was held that the Probate Court was the proper tribunal to assess damages on an administration bond—5 Halstead, N. J., 65; 1 do., cited as above. But a court of equity has jurisdiction of a bill, by a distributee or legatee against an administrator and his sureties, or either of them alone, on their bond, without any previous suit at law.

6 Calls. Va. Rep., p. 21.

2 Rand., 483.

2 J. J. Marshall, 198.

3 Monroe, 354.

4 Munford, 296, 457 ; 2 Bibb., 276.

2 Hen'g and Mumf., 8 ; and Rule 51 of this Court.

These cases are conclusive on the points of jurisdiction alike upon principle and as precedents.

The counsel for the appellee stated their argument in support of the decree of the court below, dismissing the bill, as follows:

We hope to be able to make it very clear to your honors that the purpose of the complainant in filing this bill was to relieve himself from the necessity of pursuing the only course which, under the operation of the Constitution and laws of Mississippi, it was competent for him to pursue, as well as to evade the force and effect of decisions of the High Court of Errors and Appeals, made in this very cause, and between the same parties.

First, then, what has been adjudicated by said High Court of Errors and Appeals in this very cause and between the parties to this record?

It will be borne in mind that this suit is an attempt to enforce the decree of the Probate Court of Claiborne county, Mississippi, which was rendered in the plenary proceedings instituted in that court by the complainant herein against Tunstall, the administrator appointed by that court, of Wheeler C. Green. The case is first brought to the attention of the said High Court of Errors and Appeals, in Green, administrator, appellant *v.* Tunstall et al. 5 How. (Miss.) R., 638.

It was then and there held, that "the Probate Court has not jurisdiction which will enable it to proceed against the sureties in an administrator's bond, on a plenary proceeding by bill. The sureties in the administrator's bond must be sued at law, after proceedings to fix the liability of the administrator." It will be seen, from an examination of the report of the case, that a bill was filed in 1839, in the Probate Court aforesaid, against said Tunstall, administrator, and his securities on his bond, (it is the same thing denominated a plenary proceeding in this record,) for discovery of asserts, an account, and distribution. The defendants failing to appear and answer, *pro confesso* was taken against them, and afterwards a final decree for $44,403.35—execution was sued out, which was superseded on Tunstall's petition. At May term, 1840, Tunstall filed a petition or bill of review to revise the decree of 1839, for

several reasons; the only one needful to be stated being, that the court had not jurisdiction of said original bill, and that its decree was void. Green, complainant in this bill, demurred to the said petition or bill of review. Said decree was reversed as to the sureties, and the cause reopened as to Tunstall, and from that order an appeal was prosecuted. It is very true that one of the questions decided by the court had reference more particularly to the question, whether the sureties of an administrator could be called to account in the Probate Court, or whether they should not be sued after a final settlement by the administrator, and a decree to pay what might be found to be due, or to make distribution. Reference is made to the statute of Mississippi, authorizing the institution of plenary proceedings—Hutch. Code, 547, sec. 7—which provides, that whenever either of the parties, having a contest in the Orphans' Court, shall require, the said court may direct a plenary proceeding, by bill or petition, to which there shall be an answer on oath, (or affirmation;) and if the party refuse to answer on oath to any matter alleged in the bill or petition, and proper for the court to decide upon, the said party may be attached, fined, and committed, at the discretion of the court, and the matters set forth in said bill or petition shall be taken *pro confesso*, and decreed accordingly. Being liable only on the administration bond, not being officers of the Probate Court, the only recourse against the sureties is by action at law against them, after the liability of the administrator has been ascertained by proper proceedings in that behalf, and after a final settlement by him, and a decree of the court fixing the amount of his liability, and directing him to pay it. The same rule is held in Alabama and South Carolina, as may be seen by reference to the cases cited by the High Court, viz:

1 Porter, 70.

3 Stew and Port., 263, 348.

2 Bai., (S. C.,) 60.

1 Bai., (S. C.,) 27.

1 Nott and McCord, 587.

4 Nott and McCord, 113, 120.

It will be recollected that Whiting was only a security of

Tunstall in his administration bond, and survived the grant of letters to Tunstall only about ten months. The defendant, Creighton, is administrator of Whiting and executor of defendant, McCaleb, who was a security on the bond of defendant, Creighton as administrator of Whiting. The case cited from 5th Howard, apart from being an adjudication between the same parties of the same subject matter, would be an authority upon general principles for the appellees.

The same arguments are offered, the same authorities, and some others, are cited by appellant's counsel in his printed brief in this case, which were urged by the learned counsel who argued the case from 5th Howard already cited, as may be seen from page 644 of the report of said case. Yet the High Court of Mississippi declare that they were authorities which did not apply to the case then before them, but related entirely to proceedings in the court of chancery, and jurisdiction was entertained on the peculiar grounds of the respective cases decided, and that the rule laid down in the cases from Alabama and South Carolina is not changed by the statute of Mississippi authorizing a joint action on the bond against an administrator and his securities for a *devastavit;* and they accordingly decided that the original decree of the Probate Court was unauthorized by law, and that the second decree was proper, and that the decree appealed from should be affirmed.

The next that we hear of these parties and of this litigation in Mississippi is in 7 Smedes and Marshall, 197.

From the report of the case there, it seems that appellant's counsel presented a claim to the commissioners of insolvency appointed upon the estate of said Whiting, which had been declared insolvent, amounting to $60,000, which was rejected by said commissioners, because unsupported by proof; that appellant thereupon filed his petition in the Probate Court, reciting the action of said court upon the plenary proceedings aforesaid, the decree thereon, and the order that suit be brought on the bond of said Tunstall, as administrator, against him and Whiting as his surety, for the payment of said decree, in any court having competent jurisdiction thereof—a

copy of said bond and decree being all the evidence submit-ted to said commissioners in support of said claim—which was for the full amount of said bond, and that said evidence was sufficient, and prays that referees be appointed to audit said claim. They were appointed accordingly, and reported in favor of the allowance of said claim, embracing a copy of said bond in their report, as the evidence on which they based their said allowance. The administrator, Creighton, filed exceptions to the sufficiency and competency of the evidence. The exceptions were sustained, and said report set aside, to which said appellant filed a bill of exceptions, which brought the case before the High Court on an appeal from the decree vacating the allowance of said commissioners. The bill of exceptions recites that appellant relied on a copy of the bond of the administrator, and on the decree of the Probate Court rendered in the plenary proceedings aforesaid. The High Court decide, " that in an action at law on the bond of an administrator, the bond is but inducement to the action, and no recovery can be had on it without proof of damages. It is only security for such damages as the parties interested in the estate sustained.. To make it a valid claim against an insolvent estate, or against any one, it must be accompanied by proof of damages; if not so accompanied, it is not a claim. There must be proof that the condition has been broken, for it is only on such a contingency that a right of action accrues." And again, " instead of allowing the penalty of the bond as a claim, the referees should have allowed the amount of damages sustained by a breach of the condition." Accordingly, they affirmed the judgment of the court below.

We again meet with this same claim in Green *v.* Creighton, (10 Smedes and Marshall, 159.) Now, however, the *forum* is changed, and, instead of proceedings in the Probate Court of Claiborne county, it is a bill filed in the Superior Court of Chancery of Mississippi : and we ask attention to the striking similarity of the prayer as set out in the report of the case, and the prayer of the present bill. The objects of the bill are very clearly specified in the opinion of the court, and are the same precisely, in legal intendment and effect, with the objects

of this bill. · An injunction had been granted to restrain de-
fendant, Creighton, from paying a certain other claim against
the estate of Whiting. . The chancellor dissolved the injunc-
tion, and from that order an appeal was taken to the High
Court of Errors and Appeals.

. The following · is the emphatic language of the court in
affirming the decree of the chancellor: .

"Nothing, certainly, is better settled in this court, than that
the Court of Chancery does not possess the jurisdiction which
it is here asked to exercise. The administration of estates,
and the settlement of the accounts of the administrators, falls
peculiarly and exclusively under the cognizance of the Probate
Court. * * * Suits upon the bonds of administrators per-
tain to the Circuit Court."

In that bill, it was alleged that the administrators had prac-
ticed fraud in their settlements with the Probate Court—of
which, however, no proof was offered or attempted; and the
High Court held that, if the charge were established, a court
of equity would have jurisdiction of a bill to set aside the set-
tlements, and order new ones to be made in the Probate
Court; but it could only entertain it for that purpose, and to
that extent, and, having removed that obstacle out of the com-
plainant's path, he would be remitted to the Probate Court,
there to pursue his remedy against the administrator, as if no
such fraudulent settlement had been made. They affirm that
there was no evidence in the case before them to support the
fraud charged. · They also notice the objection taken by the
appellant's counsel, "that there was no demurrer to the juris-
diction of the court below, and that it was too late to raise the
objection in the High Court, and decide that that rule is only
applicable in cases of concurrent jurisdiction, not where there
is an entire want of jurisdiction of the subject matter."

We omitted to state, in its proper place, that in this case a
demurrer was filed to the jurisdiction of the court, and that
it was overruled, and the defendants required to answer.

The foregoing summary will serve to show that this is no
new case in the courts of Mississippi, either in name or principle,
and will also serve to show a reason for the change of forum.

Precisely similar, in all its features, is the case of Buckingham et al. *v.* Owen.

6 Smedes and Marshall, 502.

In that case, the appellee, Owen, filed his bill in the Superior Court of Chancery, reciting that on 28th February, 1840, he recovered a judgment in the Circuit Court against G. W. and B. Sims, administrators of M. Sims; that they resigned their letters of administration 2d July, 1839, and one J. R. Greer was appointed administrator *de bonis non*, who gave bond, with certain persons as securities, and took possession of the unadministered effects of said M. Sims, deceased; that he collected and appropriated to his own use a large amount of assets, and committed, in his said administration, a *devastavit*, for which he and his securities on his bond were liable to answer; that said Greer died in September, 1840, intestate and insolvent; that no one had administered on his estate; that in December, 1840, one R. Davis was appointed administrator *de bonis non* of said Sims, and reported the estate insolvent; that the debt to said Owen was still due. The bill prayed that the sureties on Greer's bond might be decreed to pay the judgment and costs. The defendants demurred, for want of jurisdiction. Their demurrer was overruled, and they appealed.

It will be seen, from the foregoing statement, the said original administrators, G. W. and B. Sims, had resigned some six or seven months prior to the rendition of the judgment. The judgment was, in point of fact, as it is indeed held by the court, a nullity. But the High Court proceed to remark, that even if it had been a judgment against Greer, the administrator *de bonis non*, "we do not see upon what principle the jurisdiction of a court of chancery could be sustained in this State over the subject matter, after reviewing the authorities cited for the appellee, some of the very same cited by appellants in this case, particularly Spottswood *v.* Dandridge, 4 Munford R., 289.

They wholly deny the principle attempted to be established by them. They admit that, in some of the States of the Union, in suits against executors and administrators, courts of equity

have concurrent jurisdiction with courts of law, and that it is upon that principle a court of chancery in Virginia exercises it; but they quote with approbation the language in 2 Rob. Pr., 38, showing the strong inclination of the Court of Appeals in that State to restrict parties to their remedy at law, when it is full and adequate, and referring to the case before cited by us, Green *v.* Tunstall, 5 Howard, 638.

They say that was " a bill filed against the administrator and his sureties for a discovery and account of assets, and for distribution. The object was similar to that in view in this case, (Buckingham *v.* Owen.) The very authorities cited to sustain this bill were cited in the argument of that cause. The court decided that the remedy upon the bond was exclusively in a court of law." So they held that the chancellor erred in overruling the demurrer; they reversed his decree, and dismissed the bill for want of jurisdiction in the Chancery Court to entertain it.

The 4th article, sec. 18, of the Constitution of the State of Mississippi, provides for the establishment of the Probate Court. Its language is, " that a Probate Court shall be established in each county of this State, with jurisdiction in all matters testamentary and of administration, of orphans' business and the allotment of dower, in cases of idiocy and lunacy, and of persons *non compos mentis.*" In construing the powers of that court, derived from that clause of the Constitution, the High Court of Errors and Appeals of Mississippi have repeatedly held that its jurisdiction was exclusive in reference to the matters committed to it. And thus the Superior Court of Chancery of said State has no jurisdiction whatever of the subjects confided to the Probate Court. Accordingly, on a bill filed in said Chancery Court to review, in a matter of administration, the proceedings of the Probate Court, it was held that the Chancery Court had no jurisdiction of the case, that it belonged exclusively to the Probate Court, and the bill was therefore dismissed.

Blanton *v.* King, 2 How. Miss. R., 856.

Carmichael *v.* Bronder, 3 ib., 252.

Again. When the Probate Court has full jurisdiction of a

matter, its judgment is final, and cannot be disturbed, unless fraud is charged and proved.

Stubblefield *v.* McRaven, 5 S. and M., 130.

Jones *v.* Coon, ib., 751.

The utmost that a court of chancery can do is, where fraud is charged against a settlement of an administrator in the Probate Court, to set aside the settlement made in the Probate Court, and direct a new settlement there. Its jurisdiction does not extend beyond that, as was held between the parties to this record in 10 S. and M., 159.

Mr. Justice CAMPBELL delivered the opinion of the court.

The intestate of the plaintiff, as an heir of Wheeler Green, deceased, and claiming, by assignment of the remaining heirs, the entire estate, filed this bill against the defendant, in his capacity of administrator of Amos Whiting, deceased, and of executor of the will of Jonathan McCaleb. He states, that Albert Tunstall became the administrator of the estate of Wheeler Green by the appointment of the Court of Probate of Claiborne county, Mississippi, in 1836.; that he gave bond for the faithful performance of his duties, with Amos Whiting as his surety; that Tunstall received a large amount of property belonging to the estate, and committed a devastavit; that in the year 1841, his intestate summoned Tunstall before the Probate Court to make an account, and upon that accounting he was found to be indebted to him, as heir, sixty-one thousand one hundred and ninety-four 76-100 dollars; which sum he was required to pay by the decree of the court, and authority was given to prosecute a suit on the administration bond. The bill avers that Tunstall and Whiting, his surety, are both dead, and that all of his other sureties are insolvent. It charges that the defendant, Creighton, as administrator of Whiting, has assets in his hands for administration, and that a portion of the assets is in the hands of McCaleb, who is the surety of Creighton on his bond to the Probate Court, as administrator of Whiting.

The object of the bill is to establish the claim of the intestate and his representative, arising from the judgment against

Tunstall and the breach of his administration bond, on which Whiting is a surety, against the administrator of Whiting and his surety, and to obtain satisfaction from them to the extent of the assets in their hands belonging to that estate, and for this purpose they seek a discovery of the assets, and account and payment.

The defendants appeared to the bill, and allege that the estate of Whiting has been regularly administered, and that returns have been made to the Probate Court of Claiborne county, Mississippi, of whatever property came to the hands of the administrator, Creighton, whose character as administrator is admitted, and that he was then engaged in administering the estate under the laws of Mississippi; that the estate had been reported to the Probate Court as insolvent several years before this suit was instituted, and that commissioners had been appointed by that court to receive and credit the claims; which commission was still open for the proof of claims. They contest the validity of the judgment recovered against Tunstall, and the truth of the account preferred against them, and deny the jurisdiction of the Circuit Court to entertain this bill. The connection of McCaleb with the bond of Creighton is admitted, and also that a portion of the money of the estate of Whiting had been deposited with or lent to him. Upon the hearing of the cause on the pleadings and proofs, the bill was dismissed for want of jurisdiction, and by the agreement of the parties the record has been made up so as to present that question only. None other will, therefore, be considered. In the organization of the courts of the United States, the remedies at common law and in equity have been distinguished, and the jurisdiction in equity is confided to the Circuit Courts, to be exercised uniformly through the United States, and does not receive any modification from the legislation of the States, or the practice of their courts having similar powers. Livingston *v.* Story, 9 Pet., 632.

The judiciary act of 1789 conferred upon the Circuit Courts authority "to take cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive

of costs, the sum or value of five hundred dollars, and * * * the suit is between a citizen of the State where the suit is brought, and a citizen of another State."

The questions presented for inquiry in this suit are, whether the subject of the suit is properly cognizable in a court of equity, and whether any other court has previously acquired exclusive control of it. The court has jurisdiction of the parties. In the Court of Chancery, executors and administrators are considered as trustees, and that court exercises original jurisdiction over them, in favor of creditors, legatees, and heirs, in reference to the proper execution of their trust. A single creditor has been allowed to sue for his demand in equity, and obtain a decree for payment out of the personal estate without taking a general account of the testator's debts. Attorney General *v.* Cornthwaite, 2 Cox, 43; Adams Eq., 257. And the existence of this jurisdiction has been acknowledged in this court, and in several of the Courts of Chancery in the States. Hagan *v.* Walker, 14 How., 29; Pharis *v.* Leachman, 20 Ala. R., 663; Spottswood *v.* Dandridge, 4 Munf., 289. The answer of the defendant contains an assertion that, prior to the filing of the bill, the estate of Whiting was reported to the Probate Court of Claiborne county as insolvent, and thereupon that court had appointed commissioners to audit the claims that might be presented and proved, as preparatory to a final settlement, and that the commission was still open for the exhibition of claims.

But of this statement there is no sufficient proof. Neither the report nor any decretal order founded on it is contained in the record, and the proceedings referring to one are of a date subsequent to the filing of the bill.

The question arises, then, whether the fact of the pendency of proceedings in insolvency in the Probate Court will oust the jurisdiction of the Circuit Court of the United States. In Suydam *v.* Brodnax, 14 Pet., 67, a similar question was presented. A plea in abatement was interposed in the Circuit Court in Alabama, in an action at law against administrators, to the effect that the decedent's estate had been reported as insolvent to a Court of Probate, and that jurisdiction over the

persons interested and the estate had been taken in that court. This court declared that the eleventh section of the act to establish the judicial courts of the United States, carries out the constitutional right of a citizen of one State to sue a citizen of another State in the Circuit Court of the United States. "It was certainly intended," say the court, "to give to suitors having a right to sue in the Circuit Court remedies coextensive with those rights. These remedies would not be so, if any proceedings under an act of a State Legislature to which a plaintiff was not a party, exempting a person of such State from suit, could be pleaded to abate a suit in the Circuit Court."

In Williams *v.* Benedict, 8 How., 107, this court decided that a judgment creditor in a court of the United States could not obtain an execution and levy upon the property of an estate legally reported as insolvent in the State of Mississippi to the Probate Court, and which was in the course of administration in that court. The court expressly reserve the question as to the right of a State to compel foreign creditors, in all cases, to seek their remedies against the estates of decedents in the State courts alone, to the exclusion of the jurisdiction of the courts of the United States.

The cases of Peall *v.* Phipps, 14 How., 368, and Bank of Tennessee *v.* Horn, 17 How., 157, are to the same effect.

The case of the Union Bank *v.* Jolly, 18 How., 503, was that of a judgment creditor who recovered a judgment against administrators, who subsequently reported the estate of their decedent insolvent. After administering the estate in the Probate Court, it was ascertained that there was a surplus in their hands. The creditor had not made himself a party to the settlement in the Probate Court; and the administrators contended that his claim was barred.

This was a suit in Mississippi. This court determined that the creditor had a lien upon the assets thus situated.

Thus it will be seen, that under the decisions of this court, a foreign creditor may establish his debt in the courts of the United States against the representatives of a decedent, notwithstanding the local laws relative to the administration and

settlement of insolvent estates, and that the court will interpose to arrest the distribution of any surplus among the heirs. What measures the courts of the United States may take to secure the equality of such creditors in the distribution of the assets, as provided in the State laws (if any) independently of the administration in the Probate Courts, cannot be considered until a case shall be presented to this court.

The remaining question to be considered is, whether the debt described in the bill entitles a plaintiff to come into a court of equity, under the circumstances. It is well settled, that no one can proceed against the sureties on an administration bond at law, who has not recovered a judgment against the administrator. 5 How. Miss. R., 638; 6 Port., 393. But this rule is not founded upon the supposition that there is no breach of the bond until a judgment is actually obtained. The duty of the administrator arises to pay the debts when their existence is discovered; and the bond is forfeited when that duty is disregarded. The jurisdiction of a court of equity to enforce the bond arises from its jurisdiction over administrators, its disposition to prevent multiplicity of suits, and its power to adapt its decrees to the substantial justice of the case. Moore *v.* Walter's Heirs, 1 Marsh. R., 488; Moore *v.* Armstrong, 9 Porter, 697; Carew *v.* Mowatt, 2 Ed. Ch. R., 57.

In this case, the original debtor, Tunstall, has died insolvent. Whiting, his surety, has died insolvent. A portion of the assets belonging to the estate of the latter is in the hands of the surety of this administrator. A discovery of the amount and nature of the assets in hand, and their application to the payment of the debt, are required, if they are subject to the application.

We conclude that the Circuit Court was authorized to entertain this suit, and that the decree dismissing the bill is erroneous.

**Decree reversed.**