Bianchi v. Sobrinos de Ezquiaga.

# FRANCISCO BIANCHI AND ROSARIO B. DE ESTEVE, Complainants,

*v.*

# SOBRINOS DE EZQUIAGA AND BANK OF NOVA SCOTIA, Dfts.

San Juan, Equity, No. 1185.

MORTGAGE LAW.

Mortgage Law—Harsh but Constitutional.

1. Although certain provisions of the Mortgage Foreclosure Law in force in Porto Rico are extremely harsh, inasmuch as they limit the defenses which the mortgagor may make, it has been held that those provisions do not violate the Federal Constitution.

Constitutional Law—When Local Court Enjoined.

2. A Federal district court may not enjoin proceedings in a local court based upon the violation of constitutional rights unless the conditions clearly establish such violation.

Mortgage Law—Due Process.

3. The law of Porto Rico which provides for summary foreclosure of mortgages without allowing other defenses than ·payment, but which leaves the mortgagor plenary opportunity to assert other objections by separate suit, does not deprive such mortgagor of property without due process of law.

Opinion filed January 5, 1923.

*Mr. Cayetano Coll y Cuchi* for complainants.

*Mr. J. Henri Brown* for defendants.

Bianchi v. Sobrinos de Ezquiaga.

ODLIN, Judge, delivered the following opinion:

By the bill of complaint filed in this court it appears that the two complainants with Juan Bianchi are owners of certain very valuable real estate in the Island of Porto Rico, and that the said Juan Bianchi, pretending to have authority to execute a mortgage upon said real estate, but actually without such power or authority conferred by the two complainants, did execute a notarial instrument purporting to secure the payment of a certain obligation in favor of certain of the defendants, to wit: Sobrinos de Ezquiaga, in a sum exceeding $129,000; and that the said Sobrinos de Ezquiaga had pledged this mortgage to the other defendant, the Bank of Nova Scotia, to secure the sum of $50,000 due said bank from the original mortgagees. The bill then goes on to state that on September 28, 1922, Sobrinos de Ezquiaga filed a bill to foreclose the said mortgage in the Insular district court at Mayaguez, Porto Rico. It is claimed in this bill that while the said mortgage may be valid as against the said Juan Bianchi, it is null and void as against the two defendants, because they never authorized its execution, and that they had no knowledge or notice of the said mortgage until long after it had been placed upon record. All the parties are domiciled in Porto Rico.

Under the peculiar law in force in Porto Rico, which is known as the method of summary foreclosure, and which method has been adopted by the Sobrinos de Ezquiaga with respect to the proceeding just mentioned as having been instituted on September 28, 1922, the defense which these complainants in this present suit say they have, they are not allowed to present. If the acts of Juan Bianchi were of such a

Bianchi v. Sobrinos de Ezquiaga.

nature as to constitute a criminal offense, then they would be allowed to defend in the Insular court; but the bill sets forth in detail that under the existing laws in Porto Rico they are obliged to submit to a judgment against them followed by an actual sale of the property, and that the only possible remedy remaining to them in the Insular courts is to file a separate and distinct suit for the rescission and annulment of the record thereof in the registry of property; which suit these present complainants did file in the Insular district court at San Juan, where the defendants reside, on October 15, 1922, and that said suit is now pending.

The bill then goes on to recite that under the peculiar laws aforesaid the sale of the real estate will be made long before the termination of the suit for annulment, and that possession of the said real estate will pass to the purchaser, who will remain in possession during all the time until the suit for annulment shall be finally determined; and they allege that this condition of affairs operates to deprive the complainants of their property and the enjoyment thereof without due process of law, thereby denying to these complainants the equal protection of the laws, all in violation of the Federal Constitution. They therefore set up a Federal question, or seek to do so, and pray this court to take jurisdiction of this case and to enjoin these defendants from further prosecution of the foreclosure suit until the termination of the annulment suit; and then there is a general prayer for relief which terminates the bill, the bill itself being verified by Francisco Bianchi, one of the complainants.

This court had a great reluctance to grant even a temporary restraining order in this case, because of the doubt as to juris-

Bianchi v. Sobrinos de Ezquiaga.

diction; but at the time of the application for the temporary restraining order the court was at Ponce, busily engaged in an important jury trial and no opportunity to examine the authorities, as the court desired to do, and which has been done previous to preparing this present opinion.

Regarding this mortgage law itself, I do not propose at this time to express any opinion as to whether or not it is in conflict with the Federal Constitution beyond stating that I have always been impressed by the force and logic of the dissenting opinion by the late Mr. Justice McLeary of the Supreme Court of Porto Rico in the case of Gimenez v. Brenes, reported in 10 P. R. R. p. 124, decided in the year 1906, in which three members of the court upheld a foreclosure proceeding of this summary nature.

On October 27, 1922, counsel for the defendants filed a motion to dissolve and discharge the restraining order which the court had granted, and the principal reason why the court did grant this restraining order was that the complainants offered to give a bond in the sum of $150,000 to protect the defendants in this present suit against possible loss, damage, or expense in the event that the said restraining order should hereafter be dissolved. This motion is based upon several grounds, but it is unnecessary to recite them all, for the reason that I have come to the conclusion that the first ground is sound, and this first ground is based upon the claim of the counsel for defendants that this court is without jurisdiction, inasmuch as no facts are alleged in the bill of complaint conferring jurisdiction upon this court under the Organic Law of Porto Rico, or under any law or statute of the United States.

Bianchi v. Sobrinos de Ezquiaga.

A very long and carefully prepared brief has been filed by counsel for the present complainants in support of their contention that it is the duty of this court to proceed with this case upon the claim that a Federal question is involved and that the complainants are without adequate remedy in the Insular courts of Porto Rico to protect their property rights.

Fifteen decisions of the Supreme Court of the United States have been cited by counsel for complainants. I have examined them all. Two of them are cases which originated in the United States Supreme Court. These two are in Re Sawyer, 124 U. S. page 200, 31 L. ed. 402, 8 Sup. Ct. Rep. 482, and Ex parte Young, 209 U. S. page 123, 52 L. ed. 714, 13 L.R.A. (N.S.) 932, 28 Sup. Ct. Rep. 441, 14 Ann. Cas. 764. The former was a petition for habeas corpus and the writ was granted because the lower Federal court had acted without power in holding guilty of contempt certain persons charged with violating an injunction against the mayor and council of the city of Lincoln, Nebraska, who sought to remove a local police judge from his office. It was held of course that the Federal judge had no power to interfere in matters purely local, and the man who had been found guilty of contempt was discharged by the Supreme Court by means of a habeas corpus proceeding. I find nothing in this case having any bearing whatever on the present case.

The other was the famous case of Ex parte Young, who was attorney general of Minnesota, and who filed an original application before the Supreme Court of the United States because he, in his official capacity as representing the state of Minnesota, had been enjoined by the circuit court of the United States from enforcing certain statutes of Minnesota which the

Bianchi v. Sobrinos de Ezquiaga.

court deemed to be violative of the Federal Constitution; and Young had violated this injunction and had been found guilty of contempt, fined $100 and directed to dismiss his proceedings which he had begun in the state court of Minnesota, and it was further ordered by the circuit court of the United States that Young should stand committed to the custody of the Marshal until that order was obeyed. Eight judges of the Supreme Court of the United States joined in denying Young relief; the remaining judge holding that Young had been illegally deprived of his liberty. It will thus be seen that this case was one against an officer of a state and has no bearing whatever upon litigation between two individuals.

The remaining thirteen cases cited by counsel for complainants are Covington & L. Turnp. Road Co. v. Sandford, 164 U. S. 578, 41 L. ed. 560, 17 Sup. Ct. Rep. 198; Dobbins v. Los Angeles, 195 U. S. 223, 49 L. ed. 169, 25 Sup. Ct. Rep. 18; Philadelphia Co. v. Stimson, 223 U. S. 605, 56 L. ed. 570, 32 Sup. Ct. Rep. 340; Rich v. Braxton, 158 U. S. 375, 39 L. ed. 1022, 15 Sup. Ct. Rep. 1006; Dodge v. Woolsey, 18 How. 331, 15 L. ed. 401; Wehrman v. Conklin, 155 U. S. 314, 39 L. ed. 167, 15 Sup. Ct. Rep. 129; Barber v. Barber, 21 How. 582, 16 L. ed. 226; Dunphy v. Kleinsmith, 11 Wall. 610, 20 L. ed. 223; Payne v. Hook, 7 Wall. 425, 19 L. ed. 260; Ellis v. Davis, 109 U. S. 485, 27 L. ed. 1006, 3 Sup. Ct. Rep. 327; Lawrence v. Nelson, 143 U. S. 215, 36 L. ed. 130, 12 Sup. Ct. Rep. 440; Bicknell v. Comstock, 113 U. S. 149, 28 L. ed. 962, 5 Sup. Ct. Rep. 399, and Green v. Creighton (Kendall v. Creighton) 23 How. 90, 16 L. ed. 419. All of these cases are either writs of error or appeals from final decrees or final judgments which had been entered in different inferior

Bianchi v. Sobrinos de Ezquiaga.

Federal courts or from the highest court of some state or terri-
tory. In other words, no case has been cited to me by counsel
for complainants where the Supreme Court of the United
States has upheld an order of an inferior Federal court in a
case like the present one where there is no diversity of citizen
ship and where there has been no final judgment in the state
court and where the litigation commenced in the state court
and was pending at the time of the application to the Federal
court to interfere with and stop the proceedings in the state
court outside of cases involving the Bankruptcy Law.

The latest utterance upon this difficult question which I
have been able to find is a decision by the circuit court of ap-
peals for the third circuit, rendered September 28, 1922, in
the case of the American Mut. Liability Ins. Co. v. Volpe, re-
ported in 284 Fed. at page 75. The opinion is written by Mr.
Circuit Judge Davis, and the court thereby affirms a decree of
the defendants in a suit which was brought in the district court
of the United States for the district of New Jersey, which suit
sought to enjoin the execution of a judgment obtained in one
of the state courts of New Jersey upon the ground that the
enforcement of such judgment would deprive the complainant
of its right to interpose a perfectly good defense to the claim.
The successful defendant contended that the United States
district court is without jurisdiction to enjoin proceedings in
the state court unless they involve rights secured by the Con-
stitution, the laws of the United States, or are unconscionable,
and § 265 of the Judicial Code is cited, as follows: "The writ
of injunction shall not be granted by any court of the United
States to stay proceedings in any court of a state, except in
cases where such injunction may be authorized by any law re-

Bianchi v. Sobrinos de Ezquiaga.

lating to proceedings in bankruptcy." [36 Stat. at L. 1162, chap. 231, Comp. Stat. § 1242, 5 Fed. Stat. Anno. 2d ed. p. 959.]

Then Judge Davis goes on to say that where the elements of Federal and equity jurisdiction are present this provision of the Judicial Code, which has been in force for more than a century, does not prevent Federal courts from enjoining proceedings in three classes of cases: First, to enforce local statutes which are repugnant to the Constitution of the United States; second, to maintain and protect their own jurisdiction, properly acquired and still subsisting, by enjoining attempts to frustrate, defeat, or impair it through proceedings in state courts; third, to deprive a party, by means of an injunction, of the benefit of a judgment obtained in a state court under circumstances where its enforcement will be contrary to recognized principles of equity and the standards of good conscience.

Of course the present case which this court is called upon to decide does not fall within the second or the third classes of cases above mentioned. It is admitted that the litigation in the present case did not begin in the Federal court, and it is also admitted that the defendants in the present proceeding have not yet obtained any judgment in the Insular court. The theory of the present case, as presented by the complainants, must fall within the first class of cases cited by Judge Davis, or, to state it otherwise, it is sought in the present case to prevent by an injunction the enforcement of a local statute which it is claimed is repugnant to the Constitution of the United States. In connection with this class of cases Judge Davis cites three decisions of the Supreme Court of the United States, one of which, viz.: Ex parte Young, 209 U. S. 123, 52 L. ed. 714, 13

L.R.A.(N.S.) 932, 28 Sup. Ct. Rep. 441, 14 Ann. Cas. 764, is among the group of decisions cited by counsel for complainants in the present case. The other two decisions cited by Judge Davis are Truax v. Raich, 239 U. S. 33, 60 L. ed. 131, L.R.A. 1916D, 545, 36 Sup. Ct. Rep. 7, Ann. Cas. 1917B, 283; and Missouri v. Chicago, B. & Q. R. Co. 241 U. S. 533, 60 L. ed. 1148, 36 Sup. Ct. Rep. 715. I have read all these three cases, and it is very significant that they were all brought against defendants who were public officials of a state seeking to enforce proceedings under a statute which the Supreme Court of the United States considered violative of the Federal Constitution.

In denying relief to the complainants in the case now under consideration, I have also been guided largely by the views of the Honorable John C. Rose, author of the book entitled Federal Jurisdiction & Procedure, who at the time that he wrote the book was United States district judge for the district of Maryland, and who last month was promoted to be a member of the circuit court of appeals for the fourth circuit. In the second edition of his valuable work just issued by the press he sets forth very clearly in § 422 that Federal courts may not ordinarily enjoin proceedings in state courts. And he explains that the reason why Congress enacted the statute known as § 720 of the Revised Statutes, Comp. Stat. § 1242, being the same provision of law heretofore cited as § 265 of the Judicial Code, which I have quoted as part of the opinion of Judge Davis, was that Congress kept in view the dual nature of our government and sought purposely to prevent unseemly conflicts of jurisdiction between the state courts and the Federal courts. In § 423 of the same book he expressly

says that with the exception of cases in bankruptcy, or those arising under the limited liability of acts of Congress relating to shipowners, or those in which an injunction is necessary for the protection of its own suitors, and the enforcement of its own decrees, a Federal court may not grant an injunction restraining individuals from instituting or prosecuting suits in the state courts. He discusses this matter further in § 425 and refers specifically to a very interesting discussion of the question which is found in a recent opinion of the Supreme Court of the United States, 258 U. S. 358, 66 L. ed. 658, 42 Sup. Ct. Rep. 318, which was decided April 10, 1922, and is entitled Essanay Film Mfg. Co. v. Kane. The opinion in this case was written by Mr. Justice Pitney, and the difference is there clearly shown between the case of Simon v. Southern R. Co. 236 U. S. 115, 59 L. ed. 492, 35 Sup. Ct. Rep. 255, where the plaintiff was successful in enjoining a judgment of a state court, and the Essanay case, where the plaintiff sought to enjoin a judgment of a state court without success. The decision of the District Court in the Essanay Case is found in 264 Fed. 959, and the opinion of the circuit court of appeals is found in 256 Fed. 271. The district court, the circuit court of appeals, and the Supreme Court of the United States all held against the Essanay Company, and it was distinctly decided that while a Federal court of equity should enjoin the enforcement of a state judgment absolutely void (as was the fact in Simon v. Southern R. Co. above cited), a Federal court of equity may not use its process to restrain further prosecution of a case still actually being litigated in a state court.

In conclusion, without deciding, — because I think I have

no jurisdiction to decide,—whether the summary mortgage foreclosure law of Porto Rico does or does not violate the Federal Constitution, it seems clear to me that the complainants in the present case have improperly applied to this court for relief. I am unable to see why the present complainants, if the contention of their counsel is sound, may not apply to the supreme court of Porto Rico for a mandamus requiring the Insular district court to permit the defense embodied in their bill now presented to this court upon the ground that the Porto Rican statute is unconstitutional, and in case of a denial by the supreme court of Porto Rico of such application for a mandamus, then proper application for relief by means of a stay may be submitted to the Supreme Court of the United States.

At all events, whether this last suggestion of mine be sound or unsound, I am convinced, after a careful study of many authorities, that it is my duty to dismiss the present bill for lack of jurisdiction, and it is so ordered.