Andrew Hood et al., Respondents, *v.* Frederick Hood et al., Appellants.

Where a testator gives real and personal estate to his executor in trust, to sell and invest the proceeds for the purposes of the trusts specified, under the doctrine of equitable conversion, the real estate is to be considered as personalty; the proceeds of sales, when received by him, become legal assets in the hands of the executor as such, and he is bound to account, before the surrogate, therefor. He is also compellable to account, as executor, for the rents and profits.

Where the executor is a non-resident, and has given the bond required by the statute in such case (2 R. S. 70, §§ 6, 7), his sureties can be held responsible for the result of such an accounting, in case of his default.

The default of the executor must, however, be established in a proper proceeding against him, before the sureties can be prosecuted upon their bond; and as the statutes have prescribed the prior steps, and the cases in which actions may be brought upon the bond (2 R. S. 116, § 19; chap. 460, Laws of 1837), the right only arises upon compliance with the statutory regulations.

The same rules apply to bonds of executors as to bonds of administrators.

No action at law, therefore, can be maintained upon an executor's bond, save in case of disobedience of some order of the surrogate, and after that officer shall have authorized the prosecution of such bond; nor can the requirements of the statute be disregarded in an equitable action, where the statutory remedies can be pursued.

*Carow* v. *Mowatt* (2 Edw. Ch. 59), distinguished.

*Cuddeback* v. *Kent* (5 Paige, 92), distinguished and questioned.

Accordingly *held*, that an equitable action was not maintainable against a non-resident executor, and the sureties upon his bond, to establish a *devastavit* upon the part of the former, and to enforce the liability of the latter upon the bond, in the absence of proof of special circumstances, showing the necessity for the intervention of a court of equity.

*It seems* that a surrogate has jurisdiction to cite an executor to account at.

the instance of a legatee, although the legacy be not yet payable; and if, upon the accounting, any waste or misapplication of the funds appear, the surrogate may order their replacement.

The recital in a surrogate's decree, upon the final accounting of an executor, that proof of service of citation upon infant legatees was produced, is not conclusive as to such service; it is the duty of the executor to see that proof of service is preserved.

A legatee transferred by an assignment, absolute on its face, all his interest in the testator's estate to a firm which, at the same time, executed to him an instrument agreeing that, if more than a sum specified was realized, they would pay to him the excess. In an action by the legatee against the executor and his sureties, defendant set up the assignment, and claimed that the assignees were necessary parties. The assignment was proved on the trial, and defendant's counsel objected to the defect of parties; plaintiff's 'counsel stated that one of the firm was in court, the court thereupon stated that it would direct the pleadings to be amended and the members of the firm brought·in immediately as parties, and directed the trial to proceed. At the close of plaintiffs' case, defendants' counsel moved to dismiss, because of defect of parties. The motion was denied. *Held* error; that the assignees were necessary parties; and that the proceeding on the trial did not obviate the objection, as it did not make them parties on the record so as to bind them.

*Hood* v. *Hood* (19 Hun, 300), reversed.

(Argued December 16, 1880; decided October 4, 1881.)

Appeal from order of the General Term of the Supreme Court, in the second judicial department, made December 8, 1879, which affirmed an ·interlocutory judgment entered upon a decision of the court on trial at Special Term and denied a motion for a new trial. (Reported below, 19 Hun, 300.)

The nature of the action and the facts are sufficiently stated in the opinion.

*Abner C. Thomas* for appellant Frederick Hood. The court erred in allowing a material amendment to the complaint to be made summarily upon the trial by the addition of new parties who did not appear, and by compelling the defendant to continue the trial in the absence of these parties, and by denying his application for leave to answer the complaint thus amended. (Code, § 452; *Hasbrouck* v. *Bunce,* 62 N. Y. 475; *Low* v. *Graydon,* 14 Abb. 444; *People* v. *Woods,* 2 Sandf. 652; *Trip* v. *Vincent,* 8 Paige, 176; *Blodget* v. *Conklin,* 9

How. 444; *Bean* v. *Mather*, 1 Daly, 440; *Stoutenburg* v. *Vandenburg*, 7 How. 229; *Everson* v. *Gehrman*, 10 id. 301; *Lambert* v. *Converse*, 22 id. 265; *Crane* v. *French*, 1 Wend. 311; *Binney* v. *Le Gal*, 19 Barb. 592; *Bridenbecker* v. *Mason*, 16 How. 208; *Brownson* v. *Gifford*, 8 How. 392; *Walrath* v. *Handy*, 24 id. 353.) The recitals in the decree were evidence of the due service of the citation. (*Rose* v. *Lewis*, 3 Sandf. 320; *Barber* v. *Winslow*, 12 Wend. 102; Laws of 1874, chap. 156; *Banta* v. *Calhoun*, 2 A. K. Marsh. 167.) The appearance by the guardian *ad litem* conferred jurisdiction, and the remedy is against the attorney. (*Denton* v. *Noyes*, 6 Johns. 296; *Brown* v. *Nichols*, 42 N. Y. 26.)

*Edward P. Wilder* for appellant David Moffat. An action in equity could not be brought against the sureties on the executor's bond until after an accounting by the principal. (*Carow* v. *Mowatt*, 2 Edw. Ch. 65, note 67; *Teague* v. *Dendy*, 2 Mc. Ch. 207; *Glen* v. *Conner*, 1 Harp. Ch. 267; *Stillwell* v. *Mills*, 19 Johns. 304; *Salisbury* v. *Van Hoesen*, 3 Hill, 77; *Brown* v. *Balde*, 3 Lans. 283; Code, § 970; *Wheelock* v. *Lee*, 74 N. Y. 500–501; *Thayer* v. *Clark*, 4 Abb. Ct. App. Dec. 391; 48 Barb. 243; *Schofield* v. *Churchill*, 72 N. Y. 565, 570; *Casoni* v. *Jerome*, 58 id. 321, 322.) The court erred in allowing a material amendment to the complaint to be made upon the trial, by the addition of new parties, who did not appear, and by denying the application of defendants for leave to answer the complaint as amended. (*Webster* v. *Bond*, 9 Hun, 437; *Union Bk.* v. *Mott*, 11 Abb. 46; *Allaben* v. *Wakeman*, 10 id. 163; Code, §§ 446, 447, 448, 449, 452; *Hasbrouck* v. *Bunce*, 62 N. Y. 475; *Low* v. *Graydon*, 14 Abb. 444; *People* v. *Woods*, 2 Sandf. 652; *Davis* v. *The Mayor*, 14 N. Y. 506, 527–8; *Trip* v. *Vincent*, 8 Paige, 176; *Blodget* v. *Conklin*, 9 How. 444; *Bean* v. *Mather*, 1 Daly, 440; *Stoutenburgh* v. *Vandenburg*, 7 How. 229; *Everson* v. *Gehrman*, 10 id. 301; *Lambert* v. *Converse*, 22 id. 265; *Crane* v. *French*, 1 Wend. 311; *Binney* v. *Le Gal*, 19 Barb. 592; *Bridenbecker* v. *Mason*, 16 How. 208; *Brownson* v.

*Gifford,* 8 id. 392; *Walrath* v. *Handy,* 24 id. 353; *Hasbrouck* v. *Bunce,* 62 id. 475; *Webster* v. *Bond,* 9 Hun, 437; *Danie* v. *The Mayor,* 14 N. Y. 527–528; *McCotter* v. *Lawrence,* 4 Hun, 107.) The defendant Moffat is only liable for the breaches of trust of Frederick Hood as executor, not as testamentary trustee. (*Judson* v. *Gibbons,* 5 Wend. 224; *Williams* v. *Conrad,* 30 Barb. 524, 532; *Edgerton* v. *Conklin,* 25 Wend. 224; *Dominic* v. *Michael,* 4 Sandf. 374; 2 R. S. 70, §§ 6, 7; id. 77, § 42; *Savage* v. *Gould,* 10 N. Y. Weekly Dig. 73; *Casoni* y. *Jerome,* 58 N. Y. 320–321.) It was error to attack collateraly the final decree of the surrogate by parol evidence. The recital in the decree was evidence of the due service of the citation. (*Rose* v. *Lewis,* 3 Lans. 320; *Barber* v. *Winslow,* 12 Wend. 102; Laws of 1874, chap. 156.)

*Roscoe A. Channing* for appellant John N. Hayward. The defendant Hayward was not a necessary or proper party to this action. (*Annett* v. *Kerr,* 2 Robt. 563; affirmed, 35 N. Y. 260–1.) The right to prosecute the bond cannot arise until a breach of its conditions has been judicially established, and it has been ordered to be prosecuted, or has been assigned for such purpose, as provided by the statutes. (Laws of 1830, chap. 320, § 23; Laws of 1837, chap. 46, § 65; Laws of 1844, chap. 104, §§ 1, 2; *People* v. *Townsend,* 37 Barb. 502; *People* v. *Laws,* 3 Abb. Pr. 450; *Bagott* v. *Boulger,* 2 Duer, 160; *People* v. *Barnes,* 12 Wend. 492; *People* v. *Corlies,* 1 Sandf. 228; *People* v. *Gould,* 4 Denio, 551; *Cridler* v. *Curry,* 44 How. 345.) The court erred in refusing to grant defendant Hayward's demand for a trial by jury. (*Davis* v. *Morris,* 36 N. Y. 369; *Bradley* v. *Aldrich,* 40 id. 511; *People, etc.* v. *A. & S. R. R. Co.,* 57 id. 174; *Wheelock* v. *Lee,* 74 id. 500; *Fire Department* v. *Harrison,* 2 Hilt. 455; *Greason* v. *Keteltas,* 17 N. Y. 491; *Colman* v. *Dixon,* 50 id. 572; *Morrell* v. *Morrell,* 17 Hun, 324; Code of Civil Procedure, § 1009, clause 4.) The recitals of the decree being full as to all jurisdictional matters were at least *prima facie* evidence of its validity, and of all the facts so recited. (*Barber*

v. *Winslow*, 12 Wend. 102 ; *Jenks* v. *Stebbins*, 11 Johns. 224 ; *Rose* v. *Lewis*, 3 Lans. 323 ; 2 Cowen & Hill's Notes ; *Potter* v. *Merchants' Bank*, 28 N. Y. 641 ; *Rowe* v. *Parsons*, 6 Hun, 338.) The court erred in its conclusion of law, that the defendants Hayward and Moffatt are liable to pay all or any part of the amount found due by Frederick Hood, on the decreed accounting, and not by him paid. (*Clark* v. *Bush*, 3 Cowen, 151.) It was error to hold that defendant Hayward was obligated under his bond for the faithfulness of Frederick Hood, as trustee, as well as executor, under the will of Andrew Hood, deceased. (*King* v. *Jenkins*, 1 Dowl. & Ryl. 41 ; *Dunning* v. *Ocean Nat. Bank*, 61 N. Y. 499 ; *Taylor* v. *Deblois*, 4 Manson [U. S. Cir. Ct.] 131 ; *Wheatley* v. *Badger*, 7 Penn. St. 559 ; *Taintor* v. *Clark*, 13 Metc. 220–7.)

*John J. Macklin* for respondents. A court of equity has inherent jurisdiction over executors ; its aid may be invoked by a legatee, whether or not the legacy has become payable, or is vested, or contingent, or is subject to a life estate, and it may call before it all persons who may be in any way interested in the accounting, or affected by the result, as sureties or otherwise. (3 Williams on Executors, 2005, 2117 ; Story's Eq. Jur., § 28, 603, 845 *a*, 541–3, 600 ; Dayton's Surrogate, 583–4.) Having acquired jurisdiction over the executor, it draws with it jurisdiction over the sureties. (*Hutchcroft* v. *Shrout*, 1 Monr. [Ky.] 206 ; Story's Eq. Jur., § 27, 28, 64 *a*, 67, 71 ; *Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 438 ; *Taliafero* v. *Thornton*, 6 Call. [Va.] 21 ; *Cuddleback* v. *Kent*, 5 Paige, 92–96 ; *Hutchcroft* v. *Shrout*, 1 Monr. 206 ; *Carroll* v. *Connett*, 2 J. J. Marsh. 198 ; *Moore* v. *Waller*, 1 A. K. Marsh. 489 ; *Spottiswood* v. *Dandridge*, 4 Munf. [Va.] 289 ; *Wiser* v. *Blachly*, 1 Johns. Ch. 607 ; *Hendry* v. *Clardy*, 8 Fla. 82 ; *Carow* v. *Mowatt*, 2 Edw. Ch. 57 ; *Clarke* v. *Shelton*, 16 Ark. 478 ; *Moren* v. *McCowen*, 23 id. 93, 97 ; *Girvan* v. *Hickman*, 21 Hun, 316.) The power of sale contained in the will, was conferred upon the executors in the character of executors, is annexed to the office of executor, and when

exercised, the proceeds were received by them as executors, not as trustees. (*Hall* v. *Hall*, 78 N. Y..539 ; *Bogart* v. *Hertell*, 4 Hill, 492 ; *Perkins* v. *Moore*, 16 Ala. 1 ; Toller on Executors, 412 ; 3 Bacon's Abr. 58; *Valentine* v. *Valentine*, 2 Barb. Ch. 430.) The powers being thus conferred upon the executors in that capacity, they could not exercise them without first qualifying as executors. (2 R. S. 72, 73, §§ 15, 16, 21 ; p. 74, Edmunds' Ed.; *In re Stevens*, 3 Paige's Ch. 420 ; *Ogden* v. *Smith*, 2 Paige, 195 ; *Taylor* v. *Morris*, 1 N. Y. 349, 358 ; *Leggett* v. *Hunter*, 19 id. 445 ; *De Peyster* v. *Clendening*, 8 Paige's Ch. 295, 310 ; *Conklin* v. *Egerton*, 25 Wend. 235.) The surrogate has no power to grant letters testamentary to a non-resident executor, excepting upon his executing a bond, with sufficient sureties, of a like form as that required of an administrator. (2 R. S. §§ 6, 7, p. 71, §§ 20, 21, p. 74, §§ 17–21, p. 87, § 45, p. 93, § 57, p. 113, § 19, p. 120.) It was intended to embrace in the bond real estate over which the executor had a power of sale. (*Casoni* v. *Jerome*, 58 N. Y. 315, 321 ; *Loring* v. *Kendall*, 1 Gray [Mass.], 305 ; *Hall* v. *Cushing*, 26 Mass. 395 ; *Dorr* v. *Wainwright*, 13 Pick. 328 ; *Town* v. *Ammidown*, 39 Mass.　　; *Prescott* v. *Pitts*, 9 id. 376 ; 5 Redf. on Wills, 92 ; Perry on Trusts, § 262 ; *Com.* v. *Forney*, 3 Watts & S. 354 ; *Zegler* v. *Sprinker*, 7 id. 353 ; *Judge of Probate* v. *Heydock*, 8 N. H. 491 ; *Wade* v. *Graham*, 4 Ohio, 126 ; *Moore* v. *Waller*, 1 A. K. Marsh. 487–8 ; *Clark* v. *West*, 5 Ala. 117 ; *Perkins* v. *Moore*, 16 id. 1.) The representative character of executor continues until the legacies directed to be paid are paid, or until at least the amount of the legacies has been set apart from the general fund and invested by the executor, as trustee, for the benefit of the legatees. (Adams' Eq. 539; marg. p. 252 ; *Miller* v. *Congdon*, 14 Gray [Mass.], 114; *Valentine* v. *Valentine*, 2 Barb. Ch. 430 ; *Drake* v. *Price*, 5 N. Y. 430 ; *Hall* v. *Hall*, 78 id. 539.) The action is purely one of equitable cognizance, and it is only where it is necessary to ascertain the amount of damages that the court will send the case to a jury. (Story's Eq. Jur., §§ 72, 73 ; *Wheton* v. *Spring*, 74 N. Y. 170.) The admission of the evidence, that no citation to

attend the final accounting was served, was proper. (*Dakin* v. *Hudson*, 6 Cow. 221; Dayton, 503; 2 R. S., §§ 60, 61, 65, p. 97; *Bolton* v. *Jackson*, 6 Robt. S. C. 166; *Ferguson* v. *Crawford*, 70 N. Y. 254, 256, 257, 262–63; *Chapman* v. *Phenix Nat. Bk.*, 5 Abb. N. C. 118–122.) The judgment, setting aside the accounting, was, therefore, proper, for the want of jurisdiction by the surrogate. (2 R. S. 94, § 65.)

RAPALLO, J. The plaintiffs are children of Andrew Hood, deceased, and legatees under his will; the defendants Frederick Hood and Maria L. Hood are executor and executrix of said will, and also legatees thereunder, and the defendants David L. Moffatt and John N. Hayward are sureties for said Frederick Hood, as such executor. The other defendants are children and legatees of the testator. The will was admitted to probate in the county of Westchester in 1864, and Frederick Hood being then a resident of the State of New Jersey was, on taking out letters testamentary, required to give the bond in question pursuant to 2 R. S. 70, § 7.

This action was brought to compel an accounting by said executor and executrix, and to charge the defendant Frederick Hood with funds of the estate alleged to have been misapplied and converted by him to his own use, and to compel his said sureties to pay the sum which might be found owing from him, and which could not be collected from him.

An interlocutory judgment was rendered in the action, according to the prayer of the complaint, referring it to a referee to take an account of the proceedings of the executor and executrix, from the time of the testator's death, and adjudging that the executor pay over to the executrix such sum as should be found owing from him on such accounting, and that the defendants Moffatt and Hayward were jointly and severally liable on their bond in case the executor should omit to make such payment or any part thereof.

This judgment also adjudged that a final accounting which had been had by said executor and executrix before the surrogate of Westchester county, and a decree thereon made by said

surrogate in 1869, were invalid and not binding upon the plaintiffs and other legatees under said will, on the ground that no citation to appear before the surrogate on said accounting had been served as required by law.

A motion for a new trial was made at General Term pursuant to section 1001 of the Code, which motion was denied, and from that decision the present appeals are taken, separately, by the sureties and by the executor.

The appeal of the sureties raises some questions other than those arising on the appeal of the executor, and these will be first considered.

The most important of these questions is, whether the sureties are liable upon their bond for the sums with which Frederick Hood, the executor, is sought to be charged in this action. They contend that the defaults, or the greater part of them, charged against Frederick Hood were not committed by him in his capacity of executor, but consist of alleged misconduct as trustee of certain real and personal estate devised and bequeathed by said will in trust for the benefit of the widow and children of the testator, and that they were not sureties for the performance of his duties as such trustee, but only for the discharge of the duties which the law cast upon him as executor, in respect to the personal estate, and for obedience to the orders of the surrogate.

The statute under which the bond was given, requires of a non-resident executor the like bond as is required by law of administrators in cases of intestacy. (2 R. S. 70, §§ 6, 7.) The form of such bond is prescribed by 2 R. S. 77, § 42. It is to be a bond to the people of this State and to be conditioned that the administrator shall faithfully execute the trust reposed in him as such, and also that he shall obey all orders of the surrogate touching the administration of the estate committed to him. The bond given by the appellants conforms to this statute. It runs to the people of the State of New York, is in the penal sum of $20,000, and is conditioned that said Frederick Hood shall faithfully execute the trust reposed in him as executor as aforesaid, and also obey all orders of the surro-

gate of the county of Westchester touching the administration of the estate committed to him.

The will of the testator gives certain legacies which are admitted to have been paid. It directs that a mortgage on certain real estate, corner of Delancey and Chrystie streets, be paid. It bequeaths to his wife, so long as she shall live, $2,000 per annum out of the net income of such real estate, or of the proceeds thereof if sold, and directs that it be not sold by his executors during the life of his wife, unless they shall deem it highly advantageous or necessary; gives the surplus rents to his children, and directs the sale of the property after the death of his wife. The testator, by the eleventh clause of the will, devises and bequeaths all the residue of his estate, real and personal, to his executors thereinafter named, in trust to sell and dispose of said real estate and collect and realize his personal estate, and, after paying certain incumbrances, to divide the balance into as many shares as he shall leave children him surviving, and invest the same on bond and mortgage on real estate in the State of New York, and pay the income of each share to his wife, if living, or, if deceased, to the legal guardian of the child to whom such share belongs, until such child shall attain the age of twenty-one years, to be used for the maintenance of such child, and as soon as each child shall arrive at the age of twenty-one years, then to pay over to him or her the share set apart for him or her with its accumulations; and by the twelfth clause of his will the testator appoints his wife, Maria Louisa, and his son, the defendant Frederick Hood, executors thereof and trustees under the same, with power to sell or lease his real estate, in their discretion.

The testator left real and personal estate amounting in value to $60,000 and upward, and the defaults of Frederick Hood, charged in the complaint and specified in the findings, are that he invested certain moneys of the estate on bond and mortgage on real estate in this State and took such securities in his own name as executor, without joining with him Maria L. Hood as executrix. That in 1875 he took a conveyance in

his name as executor, of certain real estate in New Jersey, for an expressed consideration of $60,000, subject to a mortgage of $25,000 which he assumed. That such consideration was fictitious; that the value of the property did not exceed $40,000, and that the full consideration paid by him therefor was the conveyance of certain real estate in Orange, New Jersey, owned by him, and the transfer of $10,000 of the stock of the American Trust Company, but that he represented to said Maria L. Hood, the executrix, that said purchase was made with the money of the estate and that the sum of $29,100 belonging to the estate was used by him in making such purchase. That said Frederick Hood did not invest all the money of the estate in his hands on bond and mortgage on property situated in this State, and that he has improperly used and disposed of the greater portion of the money of the estate and converted the same to his own use.

For these defaults the sureties contend that they are not liable on their bond, on the ground that the funds misappropriated were in the hands of Frederick Hood as trustee under the will, and not as executor, and his defaults were committed as such trustee and not as executor.

The case of *Stagg* v. *Jackson* (1 N. Y. 206) is decisive against the appellants on this point. In that case the dispositions of the will were substantially identical in character with those of the will now under consideration. The testator devised and bequeathed all his real and personal estate to his executors, in trust to sell the same whenever they should see fit, with authority to lease the same, and directed them to divide the whole trust estate into parts and convey one of said parts to each of his children who were of age, and hold the remaining parts until his minor children should respectively become of age, and then to pay over and convey to them, respectively, their shares, applying, in the mean time, to their maintenance such part of the income as might be necessary. One of the executors was cited by a daughter of the testator to account as executor before the surrogate, and he filed his account, omitting therefrom the rents and profits and the proceeds of

sale of the real estate, and contended, as in the present case, that in respect to those matters he was accountable only as trustee, and in a court of equity, and not as executor, and that the surrogate had no jurisdiction to take his account as trustee of the real estate. That the sales were made under a discretionary power devised to him by the will, and that it was only when lands were sold by order of the surrogate that he had jurisdiction to cite the executor to account for the proceeds. This court held, however, that on the principle of equitable conversion, the real estate was converted into personalty, and the proceeds became legal assets in the hands of the executor when received by him, and that as such executor he was bound to account before the surrogate therefor, as personal estate, and that he was also compellable to account, as executor, for the rents and profits.

In the present case, therefore, the proceeds of land sold were legal assets in the hands of Hood, as executor, for which he was accountable as such, and consequently his sureties can be held ultimately responsible for the result of such accounting. (See *Wright* v. *Trustees*, 1 Hoff. Ch. 202, 215; Laws of 1837, chap. 460, § 75.)

The liability of the sureties of a non-resident or insolvent executor, for the administration of personal estate bequeathed to an executor in trust for minor children, is recognized in *Wood* v. *Wood* (4 Paige, 299). In that case the testator bequeathed to his executor all his estate, in trust for the purposes of his will. One of the trusts was to invest and apply the income and part of the principal to the support of his children during their minority, and the executor, being about to remove from the State, was required to give security. One of the reasons assigned by the chancellor (p. 304), for requiring such security was that it was necessary to secure the faithful application of the fund to the support of the children, a trust which was to continue for nearly twenty years.

The sureties, therefore, can, in a proper proceeding, be held liable for the defaults of the executor in respect to the application of the proceeds of the real and personal estate given in

trust; but they further contend that this liability cannot be enforced in the present action. That the default of the executor must be established in a proper proceeding against him, before they can be prosecuted on their bond, and also that an assignment of the bond, or an order for its prosecution, must be made by the surrogate before an action thereon can be maintained against them. At the trial a motion to dismiss the complaint, on the ground that no leave to sue the bond or assignment of the same had been proven, was made and overruled, and the point is thus distinctly presented.

The mode of proceeding for the enforcement of the liability of the sureties of an executor or administrator is prescribed by statute. The Revised Statutes, as amended in 1830 (2 R. S. 116, § 19), provide that whenever an executor or administrator shall refuse or omit to perform any decree made against him by a surrogate having jurisdiction, for rendering an account, or upon a final settlement, or for the payment of a debt, legacy or distributive share, such surrogate may cause the bond of such executor or administrator to be prosecuted, and shall apply the moneys collected thereon in satisfaction of such decree, in the same manner as the same ought to have been applied by such executor or administrator.

Chapter 460 of the Laws of 1837, sections 63 and 64, provide for the docketing of certificates of surrogates' decrees against executors, administrators and guardians, and the issuing of execution thereon, and section 65 provides that on the return of such an execution unsatisfied, the surrogate shall, on application, assign the bond given by such executor, administrator or guardian, to the person in whose favor such decree is made, for the purpose of being prosecuted.

The remedies provided by 2 Revised Statutes, 116, section 19; and by section 65 of the act of 1837, have been held to be cumulative, and not inconsistent, the only difference being that under section 19 it is not necessary to issue any execution, but on the refusal or neglect of the executor or administrator to obey his orders, the surrogate may cause the bond to be prosecuted, and he receives and applies the proceeds; while under

the act of 1837 on the return of an execution unsatisfied, the bond is to be assigned to the party in whose favor the decree is made, and he prosecutes it. (*People* v. *Guild*, 4 Denio, 551.) But under both statutes, before any action can be maintained against the sureties, there must be a decree against the executor, a refusal or neglect to perform it, or an execution returned unsatisfied, and an order of the surrogate authorizing the prosecution of the bond. In *People* v. *Barnes* (12 Wend. 492), it was held that where an accounting had been had by an administratrix on the application of a creditor, an action could not be maintained on the bond without showing, not only an order for its prosecution, but a decree in favor of the party prosecuting. *People* v. *Guild*, above cited, was an action by a legatee on a bond given by an executor by order of a surrogate, and the case was held to be covered by both statutes. In *Baggott* v. *Boulger* (2 Duer, 160), an accounting had been had on the application of a creditor, and a decree made directing the administratrix to pay him a certain sum, and after the return of an execution issued pursuant to the act of 1837, the surrogate made an order directing that the bond be assigned to the plaintiff for the purpose of being prosecuted. This was held to be a sufficient assignment under the act of 1837, but it was not suggested that the action could be maintained without an assignment or order. As is said by Bosworth, J., in that case, notwithstanding the assignment, the surrogate retains the custody of the bond for the common benefit of all persons having claims against the estate, and the assignment contemplated by the statute is in effect only the grant of a permission or authority to prosecute the bond. It is self-evident that the power must be lodged somewhere to control actions upon the bonds of executors or administrators, for there may be numerous claims against an executor or administrator, exceeding in the aggregate the amount of the bond. The statutes of this State having provided for the cases in which actions may be brought upon the bond of an executor or administrator, and having regulated the prior steps for instituting such actions, the mere fact of so prescribing would seem

to deny the right, except upon compliance with the statutory regulations. (*Annett* v. *Kerr*, 2 Rob. 556, 564, and 35 N. Y. 256.) The bond in question was taken by an officer of limited jurisdiction, in pursuance of special statutory provisions, and it would seem to follow that where the same statutes prescribe the mode of its enforcement, no other can be pursued. The same rules apply to bonds of executors, as to bonds of administrators, for the statute under which the bond in question was taken declares that it shall be the like bond as that of an administrator, and the statutes regulating actions on such bonds, in terms apply to bonds of executors and administrators. The result of the authorities is, that no action at law can be maintained against the sureties of an executor or administrator, except in case of disobedience of some order of the surrogate, and after he shall have authorized the prosecution of the bond.

In all the cases of actions on bonds of executors and administrators which have been referred to, except *Carow* v. *Mowatt* (2 Edw. Ch. 59), a compliance with the statutory formalities has been regarded as essential to the maintenance of an action against the sureties, and I have found no other case in this State in which they have been dispensed with. (*People* v. *Corlies*, 1 Sandf. Sup. Ct. 228; *People* v. *Falconer*, 2 id. 81; *Behrle* v. *Sherman*, 10 Bosw. 292; *People* v. *Rowland*, 5 Barb. 449; *Thayer* v. *Clark*, 48 id. 243; *Annett* v. *Kerr*, 2 Rob. 563.)

It is claimed, however, that it is only in actions at law upon the bond that the statutory requirements need be observed, and that in an equitable action they may be disregarded, and two cases are relied upon as sustaining this position. They are *Carow* v. *Mowatt* (2 Edw. Ch. 59) and *Cuddeback* v. *Kent* (5 Paige, 92).

*Carow* v. *Mowatt* was decided in 1833 by Vice-Chancellor McCoun, and was a very special case. The administrator had died intestate, without rendering any account. His administratrix was a minor when letters were issued to her. The bill was filed by a creditor by specialty of the first intestate, and its object was to establish a *devastavit* by his deceased adminis-

trator, of the property which came to his hands as such administrator, and to reach the assets of such deceased administrator, and to have the demand of the complainant declared entitled to a preference over the claims of simple contract creditors, and, in case of a deficiency of the estate of the deceased administrator, to compel his sureties to contribute, and they were made parties for this purpose.

The point made on the part of the sureties was that the remedy against them was at law, and that they could not be proceeded against until a judgment or decree had been obtained against their principal, and that they were improperly joined as parties. The vice-chancellor in discussing this point concedes that he is not aware of any case in the Court of Chancery of this State or England, sanctioning such a joinder, but relies on three cases in Virginia, all of which concede that, as a general rule, the sureties of an executor or an administrator cannot be sued in equity any more than at law, until a *devastavit* has been fixed, upon the principal, in a previous suit against him. (*Bacheldor* v. *Elliott's Adm'rs*, 1 Hen. & Munf. 10 ; *Clarke* v. *Webb*, 2 id. 8 ; *Spottswood* v. *Dandridge*, 4 Munf. 289.) And he himself concedes that " where an executor or administrator is in full life and within the reach of a court of law, or a citation from the surrogate, especially under the enlarged jurisdiction which he now possesses, it can hardly become necessary for a creditor, legatee or next of kin, to resort to chancery in the first instance for the purpose of ascertaining a *devastavit*, and at the same time to make the sureties in an administration bond parties to the suit with a view to fix them."

*Cuddeback* v. *Kent* (5 Paige, 92) was a bill against the guardian of an infant and his sureties, for an account and satisfaction, and it was held that it was not necessary that a decree and an order for the prosecution of the bond should be first obtained against the guardian alone, before proceeding against him and his sureties. That if such a suit was improperly instituted the remedy was by application to the chancellor or vice-chancellor to stay it. This decision went upon the ground that the Court of Chancery had original jurisdiction in the case of an in-

fant and his guardian and sureties, and that the remedy by common-law action given by statute, was merely cumulative and not exclusive. The guardian in that case was appointed by the Court of Chancery, in a proceeding to sell the real estate of the infant, under the act of 1815, page 203, and the power to order the bond prosecuted, was vested in the Court of Chancery. There are many obvious distinctions between that case and the present, but the decision itself was distinctly disapproved in the subsequent case of *Salisbury* v. *Van Hoesen* (3 Hill, 77), which was an action against the guardian and his sureties on a bond given under the same act, and it was held that the sureties could not be sued until after an accounting by the guardian, or if dead, by his personal representatives, and if that course could not be pursued, a special case must be made out, showing the necessity of a suit in equity upon the bond. BRONSON, J., in delivering the opinion of the court, emphasizes the words of the statute which authorize the prosecution of the bond " by direction of the chancellor," and holds that they show the sense of the legislature, that proceedings in chancery should be taken, before suing the sureties. He says that he is aware that a contrary doctrine was suggested in *Cuddeback* v. *Kent*, but that it was not then necessary to decide the question, and the case of *Stilwell* v. *Mills* (19 Johns. 304) was evidently overlooked by the chancellor. *Stilwell* v. *Mills* was an action against the general guardian of an infant and his sureties, and it decided that an action could not be maintained upon the bond until after the accounts had been settled.

The authority of the surrogate to take a bond from a non-resident executor, depends wholly upon the statute, and it is a serious question whether, by the terms of the bond, when read in connection with the statute, a breach of its condition can, under any circumstances, be established otherwise than by showing a failure of the executor to obey the orders of the surrogate touching the administration of the estate. But assuming that in a case where the statutory remedies upon the bond cannot be pursued, a court of equity can interpose and establish a breach in some other manner, and give a remedy against the sureties without

any order for the prosecution of the bond, all the authorities which have been cited agree that special circumstances must be shown establishing the necessity for the interposition of a court of equity, and that if the legal remedies can be pursued, they alone can be resorted to.

In the present case no ground for the interposition of a court of equity is shown. It is argued that no decree could be made by the surrogate in this case; that the accounting could not be had before him. To sustain this point would be to establish the defense set up by the sureties that the executor was not accountable as such, but only as trustee, and that the bond did not embrace his duties as trustee, a point which has already been discussed. But it is argued further, that the surrogate has no jurisdiction to cite the executor to account, at the instance of a legatee, unless the legacy is payable, which is not the case here, and that that was a sufficient ground for the interposition of a court of equity. This point is not sound either in fact or law. As to the residuary estate, each child was entitled to receive her or his share on coming of age, and the plaintiffs are of age. Other parts of the estate are not distributable until the death of the widow, and some of the children are not yet of age. But that presents no obstacle to the settlement of the accounts of the executor by the surrogate. In the case of *Stagg* v. *Jackson*, before referred to, as reported in 2 Barb. Ch. 86, this point arose. There were contingent limitations over, of five shares of the estate in case of the death of the minors before arriving at age, and at page 95, the chancellor notices the point and holds that these limitations formed no objection to the jurisdiction of the surrogate to decree an account and settlement of the estate on the application of legatees, and to direct the immediate payment of the shares due, and that the fact that the shares of the minors were held by the executor in trust until they respectively became of age, only suspended the power of the surrogate to decree a distribution and payment of those portions of the estate to the legatees until such minors respectively arrived at the age of twenty-one years or died, when it would be ascertained to whom that part of the

capital belonged. The surrogate could undoubtedly direct the investment by the executor of the shares of the minors until they should become payable, and in case, upon the accounting, any waste or misapplication of the funds appeared, there can be no doubt of his power to order their replacement. Nor does any difficulty appear in enforcing such a decree against the executor and his sureties in the ordinary manner. No case was made out, so far as the sureties, at least, are concerned, for any proceeding in equity. The decree of the surrogate would be binding upon the sureties, and no necessity existed of making them parties to a suit in equity for the purpose of concluding them. (*Douglass* v. *Howland*, 24 Wend. 55; *Casoni* v. *Jerome*, 58 N. Y. 315.)

Various other questions are raised which are common to the cases of all the defendants. It appears that an accounting was had in 1869, by the executor and executrix, before the surrogate of Westchester county, and a final decree was made by him; but the court found that the citation had not been served on the legatees, who were infants, although it is recited in the decree that proof of service was produced and that a guardian *ad litem* was appointed for them. These proofs were not produced on the trial, and there was some evidence, though slight, contradicting this recital. The court below adjudged this decree void, for want of jurisdiction, and required the executor to account from the date of the decease of the testator. There may be a hardship in this, considering the length of time which has elapsed, and the possibility of the loss of vouchers, etc.; but the statute expressly provides that the decree shall be binding only upon the creditors, legatees and next of kin, upon whom the citation is served, either personally or by publication. (2 R. S. 94, § 65.) An executor, who desires to protect himself by an accounting, should consequently see that proof of the service of the citation is preserved. Under the Revised Statutes, and until the passage of the act of 1874 (Chap. 156), no provision was made for the service of the citation upon infants in such cases. In *Kellett* v. *Rathbun* (4 Paige, 102, 106) the chancellor suggested what he deemed the proper practice, and

said that the citation should be served in the presence of the legal guardian of the infant, or of some person upon whom his actual care and custody has for the time devolved, and that evidence of the service of the citation upon the minor merely was not sufficient, especially if the minor was so young as to be incapable of understanding the object of such service; and that the citation in such cases should direct the minor to appear by his guardian lawfully constituted. Under the evidence and findings in this case we cannot pronounce the conclusion erroneous, that the decree of 1869 was not binding upon the infants. There was not only no evidence of any service upon them, but their mother, in whose custody they were, denied that any such service was made. The recitals in the decree are not conclusive against this denial.

The defendants Hood and Moffatt set up in their answers an assignment by the plaintiff, Andrew Hood, of all his right, title and interest in the estate of his father, to Otto Frank, Charles A. Frank and Charles B. Frank, composing a firm of Frank Brothers, before the commencement of this action, and objected that they were necessary parties. The assignment was proved on the trial, and is an absolute assignment. The assignees executed an instrument, at the same time, agreeing that, if, by virtue of said assignment, they should receive more than enough to satisfy a claim of $15,000 and interest, which they had against Andrew Hood, they would pay over the excess to him. These instruments vested the legal title to the claim in the assignees, and they were necessary parties. The defendants' counsel, on the trial, objected to this defect of parties. The plaintiffs' counsel stated that one of the firm of Frank Brothers was in court, and the court thereupon stated that it would direct the proceedings to be amended and those parties to be brought in. The defendants' counsel objected, and asked that an order be entered, but the court stated that the order was that those persons be brought in immediately by the amendment, and that it could not stop the trial then. The counsel for defendants objected to the proceeding, and claimed the right to answer the complaint as amended; but the objection was over-

ruled and an exception taken, and the trial proceeded. At the close of the plaintiffs' case, the counsel for defendants moved to dismiss on the ground that Frank Brothers were the owners of all the interest of Andrew Hood in the estate, and were not made parties, and that they ought to have been made parties plaintiff. We think this point is well taken, and that the proceedings on the trial did not obviate it.

The mere direction that these parties be brought in immediately did not bring them in. They were not represented on the trial by attorney, nor were the defendants afforded any opportunity to answer the amended complaint. The defendants were entitled to set-up any defense they might have as against Frank Brothers, and also to have them made parties in such a manner as to bind them by the judgment. The mere verbal order of the court upon the trial, without any actual amendment of the pleadings, or any allegations in the pleadings relating to the new parties, or any appearance on the record for them, or issue joined as to them, did not make them parties on the record, so that they would be bound.

The presence of one of the parties in court did not obviate these difficulties.

There are various other exceptions in the case, but those already referred to require that the interlocutory judgment at Special Term and the order of the General Term be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.