NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—April, 1883.

SCOFIELD V. ADRIANCE.

*In the matter of the estate of* GEORGE G. SCOFIELD, *deceased.*

The Code of Civil Procedure has rather restricted than enlarged the jurisdiction of Surrogates' courts in respect to proceedings against the sureties in the bonds of executors, administrators, etc.

After the death of one holding letters of administration, if there has been issued against him no execution which has been returned wholly or partly unsatisfied, and he has not failed to obey a lawful decree or order of the Surrogate, the prosecution of his official bond is a matter entirely beyond that officer's jurisdiction.

The administratrix of decedent's estate having died before completing the execution of her trust, petitioner, who had been appointed administrator, *de bonis non*, of her decedent, prayed for leave to bring an action against the sureties in his predecessor's bond to recover the value of certain property of the estate of which he alleged she died possessed, and delivery of which he had demanded of such sureties.—

*Held*, that the prayer of the petition must be denied, the statutory provisions, from which the Surrogate's jurisdiction in the premises must be solely derived, not being sufficiently broad to include the case of such an application.

*It seems*, that no leave of a Surrogate is necessary before bringing an action against the sureties in the official bond of an executor, administrator, etc., under Code Civ. Pro., § 2607 or § 2608.

PETITION of Jesse Scofield, one of decedent's next of

kin, and administrator, *de bonis non*, of decedent, for an order permitting him to bring an action against Margaret E. Adriance, and another, sureties in the official bond of his predecessor, Catharine A. Scofield, as administratrix of decedent's estate. The facts appear suffiently in the opinion.

F. HEMMING, *for petitioner*.

ELLIOT SANDFORD, *for sureties*.

THE SURROGATE.—In January, 1879, letters were issued out of this court to Catherine A. Scofield, as administratrix of decedent's estate. Upon the granting of such letters, she made and filed her bond in the customary form. She died in August last, without having fully executed her trust, and letters of administration, *de bonis non*, have since been issued to Jesse Scofield, who is the petitioner in this proceeding. He alleges that his predecessor, at the time of her death, was in possession of certain money and other property belonging to the estate, for which she was bound to account, and that he has ineffectually demanded, from the sureties upon her bond, payment and delivery thereof. He prays, therefore, for leave of the Surrogate to commence an action against such sureties, for recovering of them the value of the property in the hands of their principal at her death.

First. Assuming, for the present, that the permission of the Surrogate is a necessary preliminary to the commencement of such an action, I am satisfied that, in the present situation of affairs, it ought not to be granted.

The circumstances, under which a prosecution will lie against the sureties on an executor's, administrator's or

guardian's bond, are distinctly specified in the statutes. Section 2607 of the Code of Civil Procedure provides that such suit can be maintained where an execution, issued upon a Surrogate's decree against the property of any such officer, has been returned wholly or partly unsatisfied.

Sections 2608 and 2609 declare that where, by a decree of the Surrogate's court, the letters of such an officer have been revoked, an action upon his bond may be main - tained by his successor, or, if no successor has been appointed, by any person aggrieved who has previously obtained leave from the Surrogate.

None of the statutory provisions bearing upon this sub- ject are broad enough to include such a case as the present, and it is from the statutes, it is scarcely neces- sary to say, that whatever authority the Surrogate has in the premises is solely derived.   While the Code of Civil Procedure has made certain changes in the law by which proceedings against sureties are regulated, it has rather restricted than enlarged the jurisdiction of this court; and judicial decisions, rendered before the Code became operative, and under the statutes theretofore in force, are accordingly pertinent and instructive.   The limitations upon proceedings against sureties on executors', admin- istrators' and guardians' bonds are clearly set forth in Stilwell v. Mills (*19 Johns.*, *304*); Peo. v. Barnes (*12 Wend.*, *492*); Salisbury v. Van Hoesen (*3 Hill*, *77*); Peo. v. Corlies (*1 Sandf.*, *228*); Annett v. Kerr (*28 How.*, *Pr.*, *324*).

The most recent and most authoritative exposition of the law upon this subject, as it stood before the enact- ment of the Code, is reported in the recent case (1881) of Hood v. Hood (*85 N. Y.*, *561*).   It is there held that the

default of an executor must be established in a proper proceeding against him, before the sureties on his bond can be prosecuted, and that, as the statutes have prescribed the steps necessary to be taken, the right of action against the sureties only arises upon compliance with those requirements. No action at law, the case holds, can be maintained on an executor's bond, save in case of disobedience to some order of the Surrogate, nor can the requirement of the statute be disregarded even in an equitable action where the statutory remedies can be pursued. In the language of the court: "The statute having provided for the cases in which actions may be brought upon the bond of an executor or administrator, and having regulated the prior steps for such action, the mere fact of so prescribing would seem to deny the right, except upon compliance with the statutory regulations. The bond was taken by an officer of limited jurisdiction in pursuance of special statutory provisions, and it would seem to follow that, where the same statutes prescribe the mode of its enforcement, no other can be pursued.

Second. Even if the situation is ripe for prosecuting the sureties upon the bond of the former administratrix of this estate, I cannot discover that the interference of the Surrogate is either necessary or proper. In respect to the procedure for such prosecutions, the Code seems to have made wide departures from the methods formerly in vogue. For example: sections 63, 64 and 65 of chapter 460 of the Laws of 1837, as amended by chapter 104 of the Laws of 1844, established the practice for the issuance of executions upon Surrogates' decrees directing the payment of moneys by executors, administrators and guardians. The sixty-fifth section of the act of 1837

provided that, if such an execution should be returned unsatisfied, the Surrogate, upon due application, should assign the bond given by such delinquent officer to the person in whose favor the decree was made, upon which the execution was founded.

These acts of 1837 and 1844 were both repealed by chapter 245 of the Laws of 1880. In their place, have appeared sections 2553, 2554 and 2607 of the Code. The last named section makes unnecessary an assignment of the bond, such as has been hitherto requisite. It provides that, "where an execution issued upon a Surrogate's decree against the property of an executor, etc., has been returned wholly or partly unsatisfied, an action, to recover the sum remaining uncollected, may be maintained upon his official bond, by and in the name of the person in whose favor the decree was made." Leave of the Surrogate need not, it would seem, be procured, before the commencement, under this section, of proceedings against sureties.

By section 21, title 3, chapter 6, part 2 of the Revised Statutes (*3 Banks, 6th ed., 92*), it was provided as follows: "In every case of revocation of testamentary letters or of letters of administration, for neglect or refusal to return an inventory, and *whenever directed by the Surrogate*, the bond given by such former executor or administrator shall be prosecuted, and a recovery shall be had thereon, . . . . and the moneys collected thereon shall be deemed assets in the hands of the person to whom such subsequent letters shall have been issued."

This provision was abrogated by the repealing act of 1880, and there appear, in its place, sections 2608 and 2609 of the Code. The former section declares that,

"where letters have been revoked by a decree of the Surrogate's court, the successor of the executor, administrator or guardian, whose letters are so revoked, may maintain an action upon his predecessor's official bond, etc."

The statute is silent as to the necessity of preliminarily obtaining the Surrogate's leave, and purposely so, it would seem; for the very next section (§ 2609) declares that, if no successor to the removed officer has been appointed, such leave must be procured befqre a "person aggrieved" may maintain an action upon such officer's bond.

The foregoing are believed to be all the existing provisions of law, upon the subject under discussion, and serve to show that the case at bar is one wherewith the Surrogate has no concern. After the death of one holding testamentary letters, or letters of administration, if there has been issued against him no execution which has been returned wholly or partly unsatisfied, and if he has not failed to obey some lawful order or decree of the Surrogate, the prosecution of his bond is a matter quite outside of that officer's jurisdiction.

From the foregoing considerations, it is equally apparent that I could not grant this petition if I would, and that I ought not to do so if I could. For both these reasons it must, therefore, be denied.

Ordered accordingly.