DETERMINED IN THE

# THIRD DEPARTMENT

AT

# GENERAL TERM,

## February, 1891.

---

EVA M. LOOP, Respondent, v. JAMES M. NORTHUP and JOHN I. SEELEY, Appellants.

*Liability of sureties on an administrator's bond to pay a fine imposed on the administrator for contempt.*

An order of a Surrogate's Court imposed a fine upon an administrator for not appearing, when cited to do so, in proceedings instituted by a party interested in the estate to require the administrator to render an account of his proceedings. *Held,* that, in the absence of an adjudication that the administrator had assets in his hands and was obligated to pay a certain sum therefrom to such party, it was not an order of the court touching the administration of the estate, under which the sureties on the bond of the administrator were liable to pay the fine imposed upon the administrator, because of his contempt of court in not having appeared pursuant to such citation.

APPEAL by the defendants, James M. Northup and John I. Seeley, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Washington on the 17th day of March, 1890, after a trial before the court and a jury at the Washington County Circuit, at which a verdict was rendered in favor of the plaintiff for $200.

*L. Fraser,* for the appellants.

*S. W. Russell,* for the respondent.

LEARNED, P. J.:

This is an appeal from a judgment on a verdict directed by the court. The action is against the sureties on an administrator's bond, and the recovery is for the full penalty of the bond.

The plaintiff filed a petition in the Surrogate's Court for an accounting, and a citation was issued returnable May 1, 1888. No record appears of that day, and it would seem that there was no appearance of any party. But, in pursuance of a letter of the administrator, the surrogate adjourned the matter to the seventh. On the seventh it was adjourned to the sixth of June, and was ordered to be continued before the special surrogate by reason of the incompetency of the surrogate. No record of the sixth of June appears, but in an order of June twenty-seventh it was recited that the parties appeared and adjourned to that day. On the twenty-seventh of June the administrator did not appear. The special surrogate made an order that the administrator show cause on the twenty-fifth of July why he should not be punished for contempt, and ordered that such order might be served personally in the State of Vermont, where the administrator resided. An affidavit, taken before a judge of probate in Vermont, of the service in Vermont of this order was produced before the special surrogate. This affidavit appears not to be valid. (Code Civ. Pro., § 844; Laws 1848, chap. 195, § 2, as amended 1867, chap. 557.)

On the twenty-fifth of July an order was made by the special surrogate, reciting these several proceedings and the service of the last order in Vermont, adjudging that the administrator had been guilty of contempt of court in disobeying its orders, and ordering him to pay to the petitioner for her damages, costs and expenses, by reason of the contempt, $250, in not having faithfully discharged his trust and not having obeyed the decree of the surrogate. And it was ordered that said sum be an allowance by way of damages, etc., to the petitioner, " enforceable in any court having jurisdiction," and that an attachment issue.

On the 27th of March, 1889, on a petition of the plaintiff, the special surrogate authorized the plaintiff to sue the bond. It may be doubted whether proceedings to punish for contempt can be commenced by service of an order in another State. And it has been already pointed out that the proof of such service appears

to be insufficient under the statutes. There was also a question made whether there was, in fact, any appearance of the administrator before the special surrogate, which appearance the defendants denied. But the court did not permit this question to go to the jury. There are, however, other questions of more importance, and, therefore, we pass those above suggested.

The plaintiff on the trial rested solely on the orders above set forth. She gave no evidence (other than those) that there was anything owing to her from the administrator. The defendants offered in evidence a receipt in full, signed by her for her share in the estate. But the court excluded this, on the ground that it was a collateral attack on the decision of the surrogate. It seems to us that there are very plain reasons why the plaintiff cannot recover in this action. In *Hood* v. *Hood* (85 N. Y., 561), after a careful examination of the subject, it was held that, before any action could be maintained against the sureties, there must be a decree against the executor, a refusal or neglect to perform it, or an execution returned unsatisfied. This rule was again recognized in *Haight* v. *Brisbin* (100 N. Y., 219). Again in *Perkins* v. *Stimmel* (114 id., 359) the same rule was applied to an action on a bond of a general guardian.

There is nothing in section 45 (2 R. S., 91) which conflicts with this rule. That section authorizes the surrogate to direct a suit on the bond for the payment of legacies *if there be assets ;* if there be not sufficient assets, then an abatement is to be made. Now, this contemplates that the surrogate shall, by an accounting, ascertain whether there are assets, and whether the assets are sufficient, before he shall direct the payment of the legacies. It necessarily implies a decision of the surrogate on those points and a direction to pay. It would be contrary to all sound principles that the surrogate should direct a suit on the bond to recover a legacy, without first finding out and deciding whether there were assets applicable thereto. Hence, under this section, as under all those referred to in the cases above cited, there must be a determination by the surrogate before an action against the sureties will lie.

This is apparent for another reason. The bond is security for all persons interested in the estate. It is not the right of one legatee alone to have the whole benefit.

It may be urged that the proceeding before the special surrogate

was an accounting and a determination of the amount owing to the plaintiff. But this is not correct. The proceeding by the plaintiff was for an accounting. But the administrator did not appear at the time to which the matter was adjourned ; and the special surrogate did not revoke the letters or issue an attachment. (Code of Civ. Pro., § 2727.) Nor did he proceed to take the account and hear the allegations and proof of the parties. (§ 2730.) But he instituted a proceeding to punish the administrator for not appearing. For this the administrator was adjudged in contempt. Now, by section 2284, if an actual loss or injury has been produced to a party, then, in certain cases, a fine may be imposed sufficient to indemnify. Where it is not shown that such actual loss or injury has been produced, then there may be a fine of $250, and costs and expenses.

There is nothing in the order indicating that any actual loss or injury to the plaintiff was shown ; and there is no determination by the special surrogate of any amount of such loss or injury. (*Swenarton* v. *Shupe*, 40 Hun, 41 ; *Clark* v. *Bininger*, 75 N. Y., 352.) And it does not appear, as it did in the last-cited case, that any proof of actual loss or injury was given.

That there was really no accounting or determination of the amount owing appears from the order itself, which continues the matter until the administrator shall be personally brought into court. The imposition of the fine, therefore, was like the fining a witness for non-attendance; it did not in any way dispose of the issues in the case.

It is not necessary to question the validity of the order of the special surrogate. Because the fine imposed, $250, was within the limit which may be imposed, where no actual loss or injury has been produced to any party. And, therefore, we have no reason to conclude from the order, or from any of the proceedings, that the special surrogate decided that the administrator was owing this plaintiff any sum of money. The special surrogate fined the administrator, for his failure to appear and account, a sum not exceeding $250. He even made this sum include the costs and expenses, which might have been added. This the special surrogate could do, assuming that the proceedings were regular, without any proof that the plaintiff was a legatee, or that the administrator had any assets in his hands,

·or that the administrator owed her anything. If the special surrogate had gone further than this, and had imposed a fine sufficient to indemnify the plaintiff, he would have been obliged to take proof and ascertain what her loss and injury were, if she had suffered any. Certainly she had suffered no loss, unless she were a legatee whose legacy had not been paid; and unless the administrator had assets in his hands applicable to her legacy.

In the court below this order of the special surrogate was treated as an adjudication that the administrator had assets in his hands, out ·of which he ought to pay the plaintiff $200. Unless that was so .adjudicated no right to recover was shown. Because no proof of any claim of the plaintiff was made, except by the production of the ·orders of the special surrogate. Now, it is plain that nothing of that kind was adjudicated. The order shows no evidence upon that point and is entirely silent in respect thereto. The special surrogate vindicated the dignity of his court by fining the administrator for not obeying its order; and that was all. And it is noticeable that ·even the petition of the plaintiff, which was the beginning of all the proceedings in the special Surrogate's Court, does not aver that there is any sum of money owing to her from the administrator.

It is not disputed that if, on a proper proceeding, the special surrogate had adjudged that the administrator owed the plaintiff a certain sum, such adjudication would have bound the sureties. But the ·difficulty is that he has done no such thing. He has fined the administrator for contempt, as he might have fined him for abusive ·conduct in the court room. And such a fine would not have been .an order of the court "touching the administration of the estate," ·for which these defendants would be liable.

The judgment should be reversed, new trial granted. costs to ·abide event.

MAYHAM, J., concurred in result.

Judgment reversed, new trial granted, costs to abide event.