In the Matter of the Application of MARY B. WILL, Executrix, for Leave to Sell Real Estate.

(*Surrogate's Court, Essex County, Filed March, 1893.*)

GUARDIANS—LIABILITY OF ESTATE OF, FOR PROPERTY OF WARD.

   The mere fact that a guardian in a foreign country had several years before possession of property of his wards, is not of itself sufficient to establish a claim in favor of the wards against the guardians' estate in a proceeding taken by creditors to sell real estate for the payment of debts. Before such a claim can be established, either the property or the proceeds thereof must be traced to the specific property sought to be sold, or else the liability of the guardian must be fixed by an accounting had in some court having jurisdiction.

Application for leave to sell real estate for the payment of debts.

B. B. Bishop, for petitioner; F. A. Smith, for James Will, tutor of infant parties; P. J. Finn, W. H. Carr and W. T. Foote, Jr., special guardians.

McLAUGHLIN, S.—Charles Will, in or about 1870, married Rebecca Anderson. Rebecca died in 1880, and at the time of her death resided in Canada. She left her surviving Alexander, David, Arthur, John and Elizabeth T., the only issues of such marriage, all of whom were, at the time of her death, under the age of fourteen years. Shortly after her death, the father, Charles Will, made application, and was appointed, under the Canadian statutes, tutor (corresponding under our statute to general guardian) of all the infants, and as such tutor, in September, 1881, he made and filed an inventory of the property left by his wife, Rebecca, and belonging to his wards. This inventory shows that at the time of her death she was possessed of personal property of various kinds and an interest in certain real estate in Canada, the possession of which, at the time the inventory was made, was passed over to the tutor. By this inventory the tutor agreed "to represent the same when and where duly required." Shortly after the filing of the inventory, and during the same year, Will married the petitioner herein, and removed with her and the children above named from Canada to Essex County, this State. Two children were born of the second marriage, Mary B. and James R. Will. Charles Will died about January 1, 1888, and left him surviving his widow, Mary B., the petitioner herein, and all the above-named children. At the time of his death he was the owner and in possession of certain real estate situate in the County of Essex, N. Y., and which real estate is now sought to be sold for the payment of his debts, his personal property being insufficient for that purpose. After the death of Will his last will and testament was admitted to probate by the surrogate of this county, and letters testamentary thereon issued to the petitioner herein on the 20th of February, 1888. She immediately entered upon

the discharge of her duties, filed an inventory of his estate, and on September 7, 1888, commenced the publication of a notice for the creditors to present claims, which notice was published as required by law. In pursuance of such notice a large number of claims were presented. The personal property was disposed of, and some time during the year 1890 she made application to this court for judicial settlement of her accounts as such executrix, and a final decree was entered in August of that year. The personal property left by the deceased was insufficient to pay his debts in full, and the decree directed that the moneys in the hand of the executrix at the time of such final settlement be paid *pro rata* among the creditors thereof. Among other creditors of the estate was the petitioner herein, and this proceeding is instituted by her for the purpose of selling the real estate owned by the deceased at the time of his death for the payment of his debts. Upon the return of the citation herein, James Will, who, after the death of Charles, was appointed tutor in Charles' place, under the Canadian statutes, of the children of the first wife, appeared and presented a claim as such tutor against the estate of Charles Will, amounting, besides interest, to the sum of $1,400; and the only question difficult of solution is whether such claim can be allowed as a valid claim against the estate of Charles Will, deceased.

Assuming that all the evidence offered in support of such claim is admissible, which is by no means clear, I am of the opinion that the claim cannot be allowed. It is unquestionably the law that an action on the bond of a guardian or administrator will not lie against the sureties until there has been an accounting by the guardian or administrator, or, in case of death, by the personal representatives. Hood v. Hood, 85 N. Y. 561; Girvin v. Hickman, 58 How. 244. In other words, no action will lie against the sureties until there has been some judicial determination, in a direct proceeding taken for that purpose, fixing default on the part of the principal. I see no reason why this rule is not applicable to the case at bar. There

7

is here no proof that any accounting has ever been made, either by Charles Will, as tutor, or, after his death, by his personal representative or successor, James Will. There is no presumption that the property mentioned in the inventory signed by Charles was converted by Charles to his own use, or that the proceeds of that property went into the real estate subsequently purchased by him, and now sought to be sold. On the contrary, the presumption is that Charles did his duty as tutor, and did not convert such property to his own use, and at the time of his death held such property as tutor, or had previously accounted therefor. There seems to me to be an insurmountable objection to the allowance of this claim until there has been some judicial determination, fixing default on the part of Charles as tutor, either under the Canadian jurisdiction or in our own courts. The inventory itself, relied on by the claimant as showing the receipt by Charles, as tutor, of property belonging to the infants, would seem to indicate that such course was absolutely necessary before proceeding against the decedent's estate. The condition upon which he received the property as tutor was that he would "represent the same when and where duly required." Has he been required to represent [return] it? If so, when? Where? To whom? The present tutor, James, was appointed in 1888. Has he, as tutor, received this property, or any part of it? Although present in court, he was not sworn as a witness, and there is absolutely no light thrown upon the question as to what has become of the property of these infants by him. It can hardly be assumed that the laws of a foreign country would permit property belonging to infants to pass beyond its jurisdiction without at least requiring an accounting or security of some kind. Clearly, as against the creditors and others interested in this estate, it cannot be assumed that the deceased took the property of the infants, and converted it to his own use, or used the same in purchasing the real estate in question.

The wisdom of the rule requiring the principal to account before proceeding against a surety, or before proceeding against a principal's estate, in case of death, is well illustrated in the

case at bar. All of the evidence given in favor   this claim may be true, and yet all of the property mentioned in the inventory filed by Charles Will, deceased, may have been turned over to his successor, James Will, immediately upon James' appointment. James may still have all of that property, or all of it may stand to the credit of or in the name of the infants. It will not do to permit claims to be established against a decedent's estate by such evidence. The mere fact that a guardian in a foreign country had several years before possession of property of his wards is not of itself sufficient to establish a claim in favor of the wards against a guardian's estate in a proceeding taken by creditors to sell real estate for the payment of debts. Before such a claim can be established, either the property or proceeds thereof must be traced to the specific property sought to be sold, or else the liability of the guardian must be fixed by an accounting had in some court having jurisdiction. In Hood v. Hood, 85 N. Y. 561, it appeared that the executor had received certain property, but the court held that that fact alone was not of itself sufficient to establish liability without an accounting. See, also, Matter of O'Brien, 45 Hun, 284, 10 St. Rep. 414. The evidence fails to satisfy me that the claim presented by James Will, as tutor, is a valid claim against the estate of Charles Will, deceased; and an order can be entered to that effect, and directing a sale of the premises in question for payment of claims allowed; order to be settled on notice. On settlement of order question of costs will be considered. Order accordingly.